STATE OF MAINE
CUMBERLAND. SS
CLERK'S OFFICE

2002 SEP 20 A 8: 11

ALLEN MAZEROLLE, et al.,

    Plaintiffs

v.

DAIMLERCHRYSLER CORP.,

    Defendant

ORDER ON
MOTION TO DISMISS

DONALD L. GARBRECHT
LAW LIBRARY

SEP 30 2002

Defendant DaimlerChrysler Corp. has moved to dismiss the class action complaint filed by plaintiffs Allen and Anne Mazerolle. DaimlerChrysler contends that the Mazerolles' request for relief in the nature of a judicial recall of certain Dodge, Chrysler, and Plymouth minivans manufactured during the years 1994-2001 is barred by the doctrine of federal preemption. DaimlerChrysler also contends that this action should be stayed under the doctrine of primary jurisdiction to await action by the National Highway Transportation Safety Administration (NHTSA). Finally, DaimlerChrysler also contends that each of the Mazerolle's individual causes of action fails to state a claim upon which relief may be granted.

1.    Federal Preemption

Included within the relief sought by the Mazerolles on behalf of themselves and their putative nationwide class is equitable relief that would amount, in essence, to a judicial recall of Dodge, Chrysler and Plymouth minivans manufactured between 1994 and 2001 with A604 and 41TE transmissions. See Prayer for Relief ¶¶ 2, 6. Pointing out that the U.S. Secretary of Transportation has regulatory authority to order recalls of

motor vehicles with safety defects, see, e.g., 49 U.S.C. §§ 30117-21, 30166(b), DaimlerChrysler argues that such equitable relief is preempted by federal law and the Supremacy Clause of the U.S. Constitution.

Three federal district courts have agreed that equitable state law claims are preempted to the extent that relief in the nature of a judicial recall is sought. Lilly v. Ford Motor Corp., 2002 WL 84603 (N.D. Ill. 2002) at *4-*5; In re Bridgestone/Firestone Inc. Tires Products Liability Litigation, 153 F.Supp. 3d 935 (S.D. Ind. 2001); Namovicz v. Cooper Tire & Rubber Co., 2001 WL 327886 (D. Md. 2001). A federal magistrate judge in the Northern District of California and a Superior Court judge in California have reached the opposite conclusion. Kent v. DaimlerChrysler Corp., 200 F.Supp. 2d 1208 (N.D. Cal. 2002); Quocchia v. DaimlerChrysler Motors Corp., No. 842383-2 (Cal. Superior Court, Alameda County, Oct. 26, 2001).[1] None of these decisions are in any way controlling on this court.

It is well settled that preemption exists (1) where Congress has expressly displaced state law, (2) where Congress has evidenced an intent to occupy a given field to the exclusion of state law, or (3) where there is a conflict between state and federal law. E.g., Wood v. General Motors Corp., 865 F.2d 395, 401 (1st Cir. 1988), cert. denied, 494 U.S. 1065 (1990), citing Schneidewind v. ANR Pipeline Co., 485 U.S. 293, 299-300 (1988). In this instance, DaimlerChrysler relies on preemption by virtue of what it sees as a conflict between state and federal law. In particular, DaimlerChrysler relies on the principle that conflict preemption exists where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." E.g.,

---

[1] The judge in Quocchia nevertheless dismissed the request for a judicial recall on the ground that such a recall was an inappropriate remedy, a conclusion based in part on the view that NHTSA was better qualified than a court to institute and supervise any recall.

2

Freightliner v. Myrick, 514 U.S. 280, 287 (1995), quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941).

Whether preemption applies here is an extremely close question. On the one hand, there is a presumption against preemption, based on the assumption that the historic police powers of the states are not superseded by federal statutes unless that is the clear and manifest intent of Congress. Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).[2] Moreover, the relevant statute in this case contains an express non-preemption provision that provides that the existence of a remedy under the statutory sections governing recalls by NHTSA "is in addition to other rights and remedies under other laws of the United States or a state." 49 U.S.C. § 30103(d).

On the other hand, the Supreme Court has squarely held that the existence of an express non-preemption provision in the governing statute does not preclude a finding of preemption where state law results in a sufficient conflict with the federal statutory scheme. Geier v. American Honda Motor Co., 529 U.S. 861, 869-74 (2000). In certain circumstances (e.g., where the terms and conditions of a proposed judicial recall would be inconsistent with the terms and conditions of a pending NHTSA recall), the potential for conflict is manifest. In the court's view, the requisite conflict might also exist in a situation where a judicial recall is proposed in a case where NHTSA has decided against recall because an alleged defect has been found to be "inconsequential to motor vehicle

---

[2] In the court's view, that presumption applies in this case. This case implicates traditional state common law remedies and traditional state police powers, not areas of primarily federal concern. Compare Buckman Co. v. Plaintiff's Legal Committee, 531 U.S. 341, 347-48 (2001); United States v. Locke, 529 U.S. 89, 108 (2000) (presumption against preemption does not apply in fields not traditionally occupied by states).

3

safety." 49 U.S.A. § 30118(d).[3]

On this record, however, there is no indication that NHTSA has taken any action with respect to A604 or 41TE transmissions or is even reviewing the issue. The mere possibility that NHTSA might take some action in the future that would conflict with the relief requested by plaintiffs does not, in the court's view, create a sufficient potential for conflict to trigger preemption. To rule otherwise would be to suggest that Congress intended to occupy the field and displace all state law remedies with respect to motor vehicle recalls, and the court is not willing to adopt that suggestion, at least on this record.

The practical and jurisprudential obstacles to any relief in the nature of a judicial recall are formidable, see, e.g., Quocchia v. DaimlerChrysler Motors Corp., No. 842383-2 (Cal. Supreme Court, Alameda County, Oct. 26, 2001), slip opin. at 7-11, and it may be extremely unlikely that a Maine Superior Court would ever thrust itself into NHTSA's area of expertise by undertaking the kind of judicial recall proposed by plaintiffs. Cf. Lilly v. Ford Motor Co., 2002 WL 84603 (N.D. Ill. 2002) at *5. On this record, however, the court does not conclude that the Mazerolle's request for a judicial recall is preempted from the outset, and DaimlerChrysler's preemption argument is therefore denied without prejudice.

2. Primary Jurisdiction

---

[3] The Supreme Court has observed in another context that preemption is ordinarily not "split" between remedies and is therefore usually found to be either applicable or inapplicable to an entire cause of action -- not just to equitable remedies. See International Paper Co. v. Ouellette, 479 U.S. 481, 499 n. 19 (1987). In this case, however, it appears clear that Congress intended to preserve any damage remedies that might exist, and any conflict with the federal statutory scheme would only apply to equitable relief. As a result, this is a case where it might be consistent with Congressional intent to split equitable remedies from damage remedies for preemption purposes.

4

DaimlerChrysler argues that this action should be stayed to allow referral of the issue to the NHTSA under the doctrine of primary jurisdiction. See generally American Automobile Manufacturers Ass'n v. Massachusetts Department of Environmental Protection, 163 F.3d 74, 80-82 (1st Cir. 1998); Ashburnham Municipal Light Plant v. Maine Yankee Atomic Power Co., 1998 ME 270 ¶ 8, 721 A.2d 651, 654. If the only issues in the case concerned the Mazerolles' request for a judicial recall or other injunctive relief, a strong argument could be made that the court should stay its hand until plaintiffs' complaints with respect to the A604 and 41TE transmissions are presented to and acted upon by NHTSA.[4]

However, where the remainder of the Mazerolles' claims seek monetary damages and where those claims are based on contract claims, warranty claims, and claims under the Unfair Trade Practices Act -- claims that do not fall within the special competence of NHTSA but rather within the traditional fare of the Maine courts -- a stay of this action to allow NHTSA to exercise primary jurisdiction is not warranted.[5]

The remaining issues for decision involve DaimlerChrysler's challenges to the legal viability of each of the Mazerolles' six causes of action.

3.     Express Warranty Claims

---

[4] Given the Mazerolles' expressed concern for the safety of other Chrysler vehicle owners -- as stated in a July 3, 2001 letter in which they turned down DaimlerChrysler's apparent offer to fully reimburse them for their transmission damage (Ex. B to complaint) -- the court would suppose that they have already presented this issue to NHTSA.

[5] At a minimum. before the court would entertain any request for a judicial recall or similar equitable relief of that nature, it would expect some showing either as to the presentation of the case to NHTSA and the status of the case before NHTSA or some showing as to the reasons why no petition to NHTSA had been made. These issues would also be relevant to the preemption issue.

According to the complaint, see ¶¶ 30-35, 129, the Chrysler vehicle purchased by the Mazerolles had an express 3 year/36,000 mile warranty and the Mazerolles' transmission failed after that warranty had expired. In count IV of the complaint the Mazerolles nevertheless assert a claim for breach of express warranty. They further allege that DaimlerChrysler was aware that the A604 or 41TE transmission was defective and had specifically reduced its warranty in 1992 to 3 years/36,000 miles in order to avoid paying repair costs for defective A604 or 41TE transmissions.

These allegations are insufficient to overcome the express terms of the warranty. Indeed, plaintiffs' breach of warranty claim fails for the same reason outlined by the U.S. Court of Appeals for the Second Circuit in <u>Abrahams v. Volkswagen of America</u>, 795 F.2d 238, 240 (2d Cir. 1986):

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular period of time. Such knowledge is easily demonstrated by the fact that manufacturers must predict rates of failure of particular parts in order to price warranties and thus can always be said to "know" that many parts will fail after the warranty period has expired. A rule that would make failure of a part actionable based on such "knowledge" would render meaningless time/mileage limitations in warranty coverage.

The First and Third Circuits have similarly rejected arguments that latent defects -- defects that do not manifest themselves until after the warranty period has expired -- may provide a basis for express warranty claims. <u>Duquesne Light Co. v. Westinghouse Electric Corp.</u>, 66 F.3d 604, 616 (3rd Cir. 1993); <u>Canal Electric Co. v. Westinghouse Electric Corp.</u>, 973 F.2d 988, 992-93 (1st Cir. 1992).

4.    Unconscionability/Failure of Essential Purpose

In counts II and VI of the complaint the Mazerolles allege that the 3 year/36,000 mile warranty nevertheless cannot be enforced against them because it was either unconscionable under UCC § 2-302 or failed of its essential purpose under UCC §2-719(2).

At least at the pleading stage, the court agrees that the Mazerolles have probably stated a sufficient claim of unconscionability to survive a Rule 12(b)(6) motion.  See Carlson v. General Motors, 883 F.2d 287, 294-96 (4th Cir. 1989), cert. denied, 495 U.S. 904, 910 (1990)  (although unconscionability is an issue of law, § 2-302 provides that parties are entitled to offer evidence if unconscionability is adequately alleged).

The problem with the Mazerolles' unconscionability argument is that, if successful, it would preclude DaimlerChrysler from relying on the expiration of the warranty.  In this case, however, the pleadings establish that DaimlerChrysler has not declined to repair the Mazerolles' vehicle because of the expiration of the warranty but that notwithstanding that expiration DaimlerChrysler has offered to reimburse them for the repair of their vehicle.  See complaint ¶ 67 and Exhibit B (July 3, 2001 letter from plaintiffs' counsel).  Given that DaimlerChrysler has not chosen to rely on the expiration of its warranty vis a vis the Mazerolles, the Mazerolles cannot claim to be harmed by that expiration date and they do not have standing to pursue their unconscionability claim.

The court, moreover, does not agree that DaimlerChrysler is unable to rely upon its willingness to reimburse the Mazerolles based on the principle that a defendant should not be able to frustrate a class action by mooting the claims of the named

7

plaintiff. See, e.g., Deposit Guaranty National Bank v. Roper, 445 U.S. 326 (1980). In this instance DaimlerChrysler's decision not to rely on the expiration of its express warranty occurred before any class action certification motion had been filed and indeed before any lawsuit had been commenced.[6]

While DaimlerChrysler's decision not to enforce the express warranty expiration against the Mazerolles does not deprive the Mazerolles of standing to assert some of their other claims, as discussed below, it directly affects their unconscionability claim. To the extent that there are (as the Mazerolles contend) other similarly situated purchasers of DaimlerChrysler vehicles as to whom DaimlerChrysler has relied upon the warranty expiration, those purchasers may have standing to pursue an unconscionability claim. The Mazerolles do not.

The Mazerolles' alternative claim that the 3 year/36,000 mile express warranty failed of its essential purpose may be disposed of more briefly. Section 2-719(2)'s provisions with respect to remedies that "fail of their essential purpose" are addressed to situations where otherwise "fair and reasonable" remedy provisions fail because of novel circumstances or circumstances not contemplated by the parties. See J. White & R. Summers, Uniform Commercial Code § 12-10(a) at 660 (4th ed. 1995); official comment to UCC Section 2-719(2). While 2-719(2) has been extended to certain other circumstances, the court is persuaded by the analysis in Boston Helicopter Charter, Inc. v. Augusta Aviation Corp., 767 F.Supp. 363, 373-74 (D. Mass. 1991), that the Mazerolles'

---

[6] The court is also not aware of any principle of law or policy requiring DaimlerChrysler to respond to extrajudicial requests for discovery merely because the Mazerolles have designated themselves as putative class representatives. See Exhibits B and C to complaint.

8

2-719(2) cause of action fails to state a claim under the circumstances of this case.[7]

In opposition to the motion to dismiss their express warranty claims, plaintiffs also raise the argument that the 3 year/36,000 mile limitation on the express warranty was "manifestly unreasonable" under UCC § 1-204 and therefore should not be enforced. The cases plaintiffs cite for this proposition are distinguishable. Moreover, the court is not persuaded that § 1-204 permits time limits on express warranties to be invalidated if a court finds them to be "unreasonable". On its face, § 1-204 addresses the interpretation of UCC provisions expressly specifying that actions are to be taken within "a reasonable time." No such provision is at issue in this case. It is doubtful that § 1-204 is intended to give the courts a roving commission to invalidate any contractual time limits they find unreasonable. The appropriate remedy for a party who seeks to avoid the durational limits of an express warranty is to demonstrate that those limits are

unconscionable -- a claim that has already been addressed above.


5.   Implied Warranty of Merchantability

Count V of the Mazerolles' complaint alleges that DaimlerChrysler breached its implied warranty of merchantability under UCC § 2-314.[8] On this issue, the court agrees with DaimlerChrysler that no claim for breach of implied warranty of

---

[7] See also IOM, Inc. v. Adell Plastics, Inc. , 151 F.3d 15, 28-29 (1st Cir. 1998). While the IOM opinion was subsequently vacated on rehearing en banc, see 193 F.3d 47 (1st Cir. 1999), the en banc opinion did not address or cast doubt upon the original panel's discussion of the 2-719(2) issue.

[8] The complaint actually refers to § 2-1212, which is the corresponding provision of the UCC applicable to leases. See complaint, ¶ 160. However, the Mazerolles allege that they purchased their vehicle. Id. ¶ __. As a result, § 2-314 (not § 2-1212) would apply. For purposes of this case, there is no difference between §§ 2-314 and 2-1212.

merchantability has been stated where the complaint demonstrates that the vehicle in question functioned for more than 2 1/2 years without incident and where the failure alleged involved one of the many constituent parts of a motor vehicle. See Suminski v. Maine Appliance Warehouse, Inc., 602 A.2d 1173, 1175 (Me. 1992).

6. Unfair Trade Practices Act

Count I of the Mazerolles' complaint alleges a violation of Maine's Unfair Trade Practice Act (UTPA), 5 M.R.S.A. § 207. Contrary to DaimlerChrysler's arguments, the allegations of the complaint state a legally cognizable claim for violation of the UTPA. Moreover, although DaimlerChrysler argues that its offer to reimburse the Mazerolles moots their UTPA claim as well as their unconscionability claim, the court perceives a difference. The Mazerolles' UTPA claim does not depend on the duration of their warranty. Instead, it is based on alleged harm to the Mazerolles that would exist under Maine law independent of any warranty.

Moreover, 5 M.R.S.A. § 213 (1-A) expressly deals with the situation where a settlement offer is rejected. That provision does not require dismissal of the claim but provides that a party will not be entitled to attorneys fees and costs if the relief eventually awarded is not more favorable than the spurned settlement offer.

7. Wrongful Concealment of Dangerous Condition

In the court's view, DaimlerChrysler has the better of the argument as to whether Maine law recognizes a cause of action in tort for a seller's alleged wrongful concealment of a dangerous or defective condition in goods that are sold. As DaimlerChrysler notes, the Mazerolles' reliance on Knowles v. Jenney, 157 Me. 392, 173

10

A.2d 347 (1961) is misplaced because that is a bailment case. Moreover, Maine does not permit tort recovery for a defective product's damage to itself, see <u>Oceanside at Pine Point Condominium Owners Assn v. Peachtree Doors, Inc.</u>, 659 A.2d 267, 270-71 (Me. 1995) (economic loss doctrine), and the court also interprets the economic loss doctrine as applicable to strict liability claims under 14 M.R.S.A. § 221. <u>See McLaughlin v. Denharco, Inc.</u>, 129 F.Supp. 2d 32, 36 (D. Me. 2001).

The entry shall be:

Defendant's motion to dismiss plaintiffs' equitable claim for a judicial recall on preemption grounds is denied without prejudice. Defendant's motion to stay action to allow NHTSA to exercise primary jurisdiction is denied. Defendant's motion to dismiss the complaint for failure to state a claim upon which relief may be granted is denied as to count I and granted as to counts II through VI. The clerk is directed to incorporate this order into the docket by reference pursuant to Rule 79(a).

Dated: September __19__, 2002

Thomas D. Warren
Justice, Superior Court

11

| Date Filed | 10-25-01 | Cumberland | Docket No. | CV-01-581 |

County

Action ___CLASS ACTION - DAMAGES___

|  |  |
|---|---|
| ALLEN & ANNE M. MAZEROLLE,<br>On Behalf of themselves and<br>all others similary situated | DAIMLER CHRYSLER AG (dismissed 04-22-02)<br>DAIMLER CHRYSLER CORPORATION |

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| TODD S. HOLBROOK, ESQ.<br>PETER J. RUBIN, ESQ.<br>100 Middle Street<br>Portland, ME  04101<br>(207) 774-1200 | PETER CULLEY, ESQ. (DAIMLER CHRYSLER CORP<br>One Monument Square<br>Portland, ME  04101-1100  (207) 791-1288 |
| KENNETH G. GILMAN, ESQ.<br>DOUGLAS M. BROOKS, ESQ.<br>DANIEL D'ANGELO, ESQ. |  |

| Date of<br>Entry | Stonehill Corporate Center<br>999 Broadway, Suite 500<br>Saugus, MA  01906 |  |
|---|---|---|

2001

STATE OF MAINE
Cumberland, ss.



SUPERIOR COURT
Civil Action
Docket No. CV-01-581

ALLEN MAZEROLLE and ANNE
MAZEROLLE, on behalf of themselves
and all others similarly situated,

Plaintiffs

v.                                                          AMENDED ORDER

DAIMLERCHRYSLER CORP.,

Defendant

It has come to the court's attention that some text was dropped from the first paragraph of the court's May 19, 2005 order denying plaintiffs' motion for class certification. Accordingly, this order is being reissued with the missing text inserted:

Before the court is plaintiffs' motion for class certification. Specifically, plaintiffs Allen and Anne Mazerolle are seeking to certify a class consisting of all persons who reside in Maine and who for personal, family, or household purposes own or lease a model year 1994-2003 Dodge Caravan, Chrysler Town & Country, or Plymouth Voyager with a DaimlerChrysler A604/41TE transmission (except for persons with claims for personal injuries). See Motion for Class Certification filed December 5, 2003, at p. 1.

In their original complaint, filed October 25, 2001, the Mazerolles brought suit on their own behalf and on behalf of a proposed nationwide class of all persons owning or leasing DaimlerChrysler minivans for model years 1994-2001 with A604/41TE transmissions. Complaint ¶59. Their complaint alleged that DaimlerChrysler minivans from those model years had defective transmissions which DaimlerChrysler knew were

likely to fail after the express three-year/36,000 mile warranty period had expired. E.g., id. ¶¶ 1, 44. On behalf of themselves and all others similarly situated, the Mazerolles alleged (1) that DaimlerChrysler had violated the Maine Unfair Trade Practices Act (UTPA) and other state unfair and deceptive trade practice statutes (Count I); (2) that DaimlerChrysler's express three year/36,000 mile warranty was unconscionable (Count II); (3) that DaimlerChrysler had wrongfully concealed a dangerous condition (Count III); (4) that DaimlerChrysler had breached its express warranty (Count IV); (5) that DaimlerChrysler had breached implied warranties under the UCC (Count V); and (6) that DaimlerChrysler's three year/36,000 mile warranty failed of its essential purpose (Count VI).

The relief sought in the complaint by the Mazerolles on behalf of themselves and their putative class includes restitution for any repair costs already paid and an order requiring DaimlerChrysler to fix or repair the latent transmission defects in any vehicle of a class member that has not already been repaired. Complaint, Prayer for Relief, ¶¶ 2, 4. The latter form of relief would amount, in effect, to a judicial recall of all Dodge, Chrysler, and Plymouth minivans manufactured between 1994 and 2001.

Instead of answering, DaimlerChrysler filed a motion to dismiss and after briefing, the court granted that motion except as to plaintiffs' UTPA claims. See Order on Motion to Dismiss filed September 20, 2002. Thereafter, on December 23, 2002, the court issued an order initially limiting discovery to factual issues pertinent to class certification and directing counsel to submit a proposed scheduling order. That order was duly submitted and signed on January 21, 2003. It provided that discovery would take place during a seven and one-half month period followed by the briefing of the class certification motion. The discovery deadline was extended once by agreement, see order filed July 29, 2003, and was extended again as a result of a discovery dispute as to

whether DaimlerChrysler should be required to produce nationwide data relating to transmission failures. See Conference Record filed September 17, 2003. By that time all parties were assuming that if a class were certified, it would be limited to Maine residents. See Order filed October 27, 2003.

Plaintiffs filed their motion for class certification on December 5, 2003. On March 18, 2004, defendant filed its opposition to the motion for class certification and on April 20, 2004, it filed a motion for summary judgment. On June 7, 2004, plaintiffs filed a reply memorandum on the motion for class certification and an opposition to the motion for summary judgment. Final briefing on both motions was completed on June 21, 2004.

This order will address the class certification motion. On a class certification motion the court must not evaluate or decide the merits of the plaintiffs' claims. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). However, in order to determine whether a class should be certified, the court must fully understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful analysis of the certification issues. Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996); Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992). Accordingly, the court has reviewed the extensive materials presented by the parties on the summary judgment motion in this case in order to determine whether the issues in this case are appropriate for class treatment.

Although the Law Court has not itself addressed the requirements of Rule 23, the Superior Court has comprehensively addressed those requirements in two cases, Karofsky v. Abbott Laboratories, 1997 Me. Super. LEXIS 316, Docket No. CV-95-1009 (Me. Superior Ct., Cumberland Cty., October 15, 1997) (Saufley, J.), and Millett v. Atlantic Richfield Co., 2000 Me. Super. LEXIS 39, Docket No. CV-98-555 (Me. Superior

Ct., Cumberland Cty., March 2, 2000) (Cole, J.). As noted in <u>Karofsky</u>, in deciding a class certification motion, the court must "walk the fine line between a rigorous analysis of the basic claims and method of proof presented by the plaintiffs and the inappropriate delving into an assessment of the merits of those claims." 1997 Me. Super. LEXIS 316 at * 12.

Ultimately the court must be persuaded that plaintiffs have met their burden of showing by a preponderance of the evidence that the proposed class meets all the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). <u>Id</u>. The decision on class certification is committed to the broad discretion of the trial court, which is in the best position to determine the relevant factual issues, to appreciate the consequences of alternative methods of resolving the factual and legal issues, and to select the most efficient method for resolution. <u>Millett</u>, 2000 Me. Super. LEXIS 39 at * 17, citing, <em>inter alia</em>, <u>Castano</u>, 84 F.3d at 740, and <u>Boughton v. Cotter Corp.</u>, 65 F.3d 823, 826 (10th Cir. 1995).

## A. GENERAL STANDARDS FOR CLASS CERTIFICATION

Pursuant to M.R. Civ. P. 23(a), a class may be certified when the plaintiffs demonstrate that:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

If the court is satisfied that all four of the Rule 23(a) requirements have been met, it must go on to determine whether the plaintiffs have also demonstrated that the case falls into at least one of the categories set forth in Rule 23(b) as appropriate for class treatment. Plaintiffs assert that this case meets both the requirements of Rule 23(b)(2) and Rule 23(b)(3).

DaimlerChrysler does not contest that this case meets the requirements of Rule 23(a)(1) and 23(a)(3)—the "numerosity" and "typicality" requirements. However, it does not agree that this case meets the requirements of Rule 23(a)(2) and 23(a)(4). Specifically, with respect to Rule 23(a)(2), DaimlerChrysler argues that because the DaimlerChrysler minivan transmissions were substantially modified twice during the period from 1994-2001, there are no questions of fact common to the putative class. It also argues that because the law of other states would have to be applied if persons residing in Maine bought their DaimlerChrysler minivans out of state, there are no common questions of law.

The court concludes that this case presents common questions of fact and law sufficient to meet the requirement of Rule 23(a)(2).[1] Regardless of the modifications that were made to the DaimlerChrysler minivan transmissions before the 1998 model year and again before the 2000 model year, plaintiffs are alleging that DaimlerChrysler minivan transmissions from the 1994-2001 model years have all experienced inordinate and identical modes of failure and that the marketing of minivans during those model years violated the UPTA. The test for commonality under Rule 23(a)(2) is not demanding and does not require a finding that every question of fact is common to every member of the class. See Millett, 2000 Me. Super. LEXIS 39 at *22-23.

In addition, the court cannot take seriously DaimlerChrysler's contention that the possibility that some putative class members purchased their minivans outside Maine deprives this case of common questions of law. The court agrees that if a nationwide class were being proposed, the task of discovering, keeping track of, and applying the laws of fifty separate states would raise major questions as to commonality and manageability. Now that plaintiffs have limited their proposed class to residents of Maine, however, those difficulties no longer exist. If DaimlerChrysler is correct that the location of the purchase would determine whether or not the UTPA applies—which plaintiffs dispute—it would be a simple matter to amend the class definition to exclude out-of-state purchasers.

DaimlerChrysler's objection as to adequacy of representation under Rule 23(a)(4) is also unavailing. DaimlerChrysler suggests that conflicts of interest may arise because three versions of the minivan transmission are at issue (one for model years 1994-1997, one for model years 1998-1999, and one for model years 2000-2001). DaimlerChrysler has failed, however, to explain how different versions of the transmission might lead to a potential conflict of interest, let alone demonstrate that an actual conflict exists.

Although plaintiffs have surmounted the first hurdle of Rule 23(a), a class cannot be certified unless they also meet the requirements of either Rule 23(b)(2) or Rule 23(b)(3).

---

[1] Whether the common questions of fact predominate over questions affecting individual class members under Rule 23(b)(3) will be considered in greater detail below.

B.     RULE 23(b)(2)

Rule 23(b)(2) permits a class to be certified if the requirements of Rule 23(a) are met and if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Accepting as true for purposes of the class certification motion plaintiffs' allegations that DaimlerChrysler was aware of and concealed the existence of defects in its minivan transmissions for model years 1994-2001, it is certainly arguable that DaimlerChrysler acted on grounds generally applicable to the class.    Moreover, injunctive relief is an available remedy in a suit brought by consumers under the UTPA. See 5 M.R.S.A. § 213(1) (2002).    However, certification under Rule 23(b)(2) is not appropriate where the appropriate final relief relates predominately to money damages. See Advisory Committee Note to FED. R. CIV. P. 23(b)(2), 39 F.R.D. at 102; Allison v. Citgo Petroleum Corp. 151 F.3d 402, 411 (5th Cir. 1998); Millett, 2000 Me. Super. LEXIS 39 at *76.   See also Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994) (noting existence of "at least a substantial possibility" that actions seeking money damages are certifiable only under Rule 23(b)(3)).

Thus, to the extent that Rule 23(b)(2) classes are not limited to requests for injunctive or declaratory relief, any claim for money damages must be merely incidental to the claim for injunctive relief. McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 553 (5th Cir. 2003); Allison, 151 F.3d at 415; Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 99-100 (W.D. Mo. 1997); Millett, 2000 Me. Super. LEXIS 39 at *76. In this case, plaintiffs are seeking an order (1) requiring DaimlerChrysler to fix or repair the latent transmission defect in all DaimlerChrysler vehicles that have not been repaired "at no cost to class members"; (2) declaring DaimlerChrysler to be financially

responsible for all sums required to be paid for repair of their vehicles; (3) requiring DaimlerChrysler to give notice to all class members; (4) permanently enjoining DaimlerChrysler from pressing the practices challenged in the complaint; and (5) compensatory damages. Complaint, Prayer for Relief, ¶¶ 2, 4, 6-8.[2]

With the exception for the prayer for compensatory damages, all of the foregoing requests are designed to sound equitable in nature. In reality, however, the relief sought in this action is monetary. Thus, in addition to the compensatory damages for class members who have already incurred repair costs, plaintiffs are seeking to make DaimlerChrysler pay for all future repair costs and pay to repair or replace all the allegedly defective transmissions that have not yet been repaired. In the context of class actions, requests for relief seeking compensation for future expenses anticipated to be incurred because of a defendant's alleged wrongdoing constitute claims for monetary, not injunctive, relief. See Millett, 2000 Me. Super. LEXIS 39 at * 79-80, citing Thomas v. FAG Bearings Corp., Inc., 846 F. Supp. 1400, 1404 (W.D. Mo. 1994)).

Even where a plaintiff has demonstrated "ingenuity" in fashioning proposed remedies that appear to be injunctive in nature, class actions may not be maintained under Rule 23(b)(2) where the claims are essentially monetary in nature. In re School Asbestos Litigation, 789 F.2d 996, 1008 (3d Cir. 1986).[3] What governs are "the realities

---

[2] Another remedy asked for in the complaint, disgorgement of all profits received from the sale of the minivans in question, Prayer for Relief, ¶ 5, is not a remedy available under the Maine Unfair Trade Practices Act (UTPA). In their complaint, plaintiffs also sought reformation of DaimlerChrysler's three year/36,000 mile warranty, id. ¶ 12, but that relief, to the extent it might ever have been available, has been mooted by the dismissal of plaintiffs' warranty claims.

[3] By way of example, plaintiffs have fashioned their claim for future repair costs as a request for an order directing DaimlerChrysler to pay for future repairs. Assuming that plaintiffs can establish that it is probable that class members will incur future repair expenses, however, such future expenses would be a potential component of a monetary damage award. DaimlerChrysler argues that persons who have not yet incurred repair costs are not properly included in the plaintiff class because they have not yet suffered any "loss of money or

of the litigation." Id.; <u>Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n</u>, 136 F.R.D. 372, 381 (D. Del. 1991); <u>Millett</u>, 2000 Me. Super. LEXIS 39 at * 81. In this case the realities of the litigation are that plaintiffs' various requests for injunctive relief are incidental to their monetary claims, not the other way around.

Instances in which monetary relief is incidental to injunctive relief for purposes of Rule 23(b)(2) involve cases in which monetary damages can be awarded as part of a uniform group remedy without the necessity of additional individual determinations. <u>See</u> <u>McManus</u>, 320 F.3d at 553-54; <u>Allison</u>, 151 F.3d at 414-15. Here, additional individual determinations would be necessary to determine what repair costs a class member had already incurred in the past, to what extent those costs were attributable to defective transmissions, and what repair costs would be probable in the future or would be incurred as time went on. This is not a case where the monetary relief sought is relief to which class members would "automatically" be entitled upon a finding of liability. <u>Allison</u>, 151 F.3d at 415.

Accordingly, this case is not eligible for certification under Rule 23(b)(2, and the question whether a class should be certified depends on whether this case falls within the ambit of Rule 23(b)(3).

---

property" within the reach of 5 M.R.S.A. § 213(1). The Mazerolles counter that class plaintiffs who have not incurred repair costs would still be entitled to an amount equalling the difference between the value of a minivan as purchased with a latent transmission defect and the value of a minivan without such a defect. <u>See</u> Plaintiffs' Memorandum in Reply to Defendant's Opposition to Class Certification, filed June 7, 2004, at 12-13. For present purposes, the court does not have to decide whether the Mazerolles are correct. If they are, a claim for the difference between the value of what they received and the value of what they bargained for would still translate into a monetary claim. <u>See</u> <u>McManus</u>, 320 F.3d at 553-54.

C.    RULE 23(b)(3)—PREDOMINANCE

Rule 23(b)(3) permits class certification (1) where the questions of law or fact common to the class "predominate" over any questions affecting any individual members, and (2) where the court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Advisory Committee Notes indicate that Rule 23(b)(3) was intended for "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results." Advisory Committee Note, 39 F.R.D. at 102-03.

The issue of whether common issues "predominate" is related to the commonality requirement of Rule 23(a)(2) discussed above. The predominance request, however, is "far more demanding" than the commonality request. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997). "To predominate, 'it is not enough that the claims arise out of a common nucleus of operative fact. Instead, the common questions must be central to all the claims. . . .'" Millett, 2000 Me. Super. LEXIS 39 at *38, quoting Puerto Rico v. M/V Emily S., 158 F.R.D. 9, 15 (D.P.R. 1994); Mattoon v. City of Pittsfield, 128 F.R.D. 17, 20 (D. Mass. 1989). As the court noted in Millett, cases involving a single event, such as an airplane crash, have more frequently been found suitable for class certification under Rule 23(b)(3) than product liability cases, where there is no single event on which liability is premised and no single proximate cause that applies equally to each member of the class. 2000 Me. Super. LEXIS 39 at *41-42, citing Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 n.20; In re Northern District of California Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847, 853 (9th Cir. 1982), cert. denied, 459 U.S. 1171 (1983). In the court's view, this case is closer to a products liability

case than a mass disaster case. This does not preclude class certification but indicates that plaintiffs' burden to show that common issues predominate will be more difficult to meet.

Implicit in the predominance issue is whether the adjudication of common issues will help achieve judicial economy, Millett, 2000 Me. Super. LEXIS 39 at *38-39, quoting Valentino v. Carter-Wallace, Inc. 97 F.3d 1227, 1234 (9th Cir. 1996), or whether individual issues will so overwhelm the common issues as to bog down the proceeding and create judicial diseconomy. See Smith, 174 F.R.D. at 94.[4]

In this case DaimlerChrysler argues that common issues do not predominate because individualized determinations will be necessary with respect to a number of issues. First, DaimlerChrysler points out that three different versions of the A604/41TE transmission were used for model years 1994-2001. See Alfonso Dep. 162-63, 167-69. Although this is not disputed by plaintiffs, they allege that despite the modifications to the transmission, DaimlerChrysler minivan transmissions continued to sustain an inordinate rate of failures and that the modes of failure were identical to those experienced earlier. See, e.g., Plaintiffs' Reply Memorandum on Class Certification, filed June 7, 2004, at 1-2, 5; Exhibit 1 to Gilman Declaration dated December 4, 2003; Exhibit 1 to Rubin Declaration dated June 7, 2004;[5] Exhibit 3 to Rubin Declaration dated June 7, 2004; Exhibit 7 to Rubin Declaration dated June 7, 2004.

---

[4] Another potential problem in the event that a class is certified despite the existence of significant individual issues is that the proceedings will focus on the common issues and the individual issues will be given short shift. This is presumably the reason that the Advisory Committee Note speaks of the need not to sacrifice procedural fairness in certifying a class under Rule 23(b)(3).

[5] By letter dated May 12, 2005 plaintiffs' counsel has confirmed that Exhibit 1 to the June 7, 2004 Rubin Declaration (filed under seal) is the same exhibit submitted as Exhibit 3 to the December 4, 2003 Gilman Declaration. The Gilman and Rubin declarations are unsworn and do not state that they are submitted "under penalty of perjury" under 28 U.S.C. § 1746. If any

That three different versions of the A604/41TE transmission are involved definitely introduces multiple issues into the case. The testimony of DaimlerChrysler's design engineer in charge of the 1998 model year modification gives DaimlerChrysler a basis to argue that no defects existed in its minivan transmission at any time, that with respect to the 1996 model year there were some manufacturing glitches during the period from August 1995 to January 1996, that major design changes were made to improve the transmission before the 1998 model year, and that further changes were made before the 2000 model year. See Alfonso Dep. 27-28, 44-51, 119-20, 154-58, 162-64, 166-69; Keeler Affidavit ¶ 17.

On a motion for class certification, it is not the court's role to consider the merits of these issues. However, it concludes that the existence of these issues will result in a number of factual determinations potentially affecting different model years. These include:

(1)  whether the transmission installed for model years 1994-1997 possessed a latent defect;

(2)  whether the modified transmission installed for model years 1998-1999 possessed any common defect with the 1994-1997 transmission or whether it possessed any independent defect; and

(3)  whether the further modified transmission installed for model years 2000-2001 possessed any common defect with its predecessors or any independent defect.

Moreover, because this is not a product liability case but a claim under the UTPA, liability depends not only on the existence of a defect but also on proof that DaimlerChrysler engaged in some deceptive practices in connection therewith. For

---

disputed facts were set forth in the declarations, therefore, they would not be entitled to any weight. To the extent that those declarations merely append other materials that could have been annexed as exhibits to plaintiffs' memoranda and whose authenticity is not questioned by defendant, the declarations do not need to be sworn.

purposes of the UTPA, the exact contours of an "unfair or deceptive" act have not been defined, but the case law suggests that such acts equate to actions such as withholding material information, unsubstantiated product claims, high pressure sales tactics, or depriving consumers of post-purchase remedies. See American Financial Services Ass'n v. FTC, 767 F.2d 957, 979 (D.C. Cir. 1985) (cited with approval in Guiggey v. Bombardier, 615 A.2d 1169, 1172-73 (Me. 1992)). The mere existence of defects, absent evidence of deception or misrepresentation, is not sufficient to maintain a claim under the UTPA. E.g., Inniss v. Methot Buick-Opel, Inc., 506 A.2d 212, 216 (Me. 1986).

For present purposes, this means that for each version of the transmission, if defects existed, there is also the question of whether DaimlerChrysler was aware of those defects and engaged in any deceptive trade practices with respect thereto. For instance, DaimlerChrysler has tendered the argument that it believed the modifications for the 1998 model year solved any existing transmission problems. See DaimlerChrysler's Statement of Material Facts in Support of Motion for Summary Judgment, filed April 20, 2004, ¶¶ 7-28.

Whether or not this is correct as a factual matter, it nevertheless demonstrates that the trial of this case would require separate consideration of each version of the transmission installed in DaimlerChrysler minivans from 1994 through 2001, with specific reference to: (1) the existence of any defects; (2) DaimlerChrysler's knowledge of any defects; and (3) any deceptive practices with respect thereto.

This complicates the case but does necessarily not compel a finding that individual issues predominate. Arguably, these issues could be dealt with through the creation of subclasses for each version of the transmission in question. A similar solution, however, is not possible with respect to a second issue on which DaimlerChrysler argues that common issues do not predominate. This is the issue of

causation. On this issue, the court ultimately concludes that certification under Rule 23(b)(3) fails because the individual issues presented on the issue of causation will swamp any common issues presented in this case.

As noted above, plaintiffs' theory is that DaimlerChrysler minivan transmissions fail at an inordinately high rate because of defects of which DaimlerChrysler was aware but did not disclose. DaimlerChrysler contends that transmissions can fail for reasons unrelated to any defects—if minivans are subjected to particular stress in the manner in which they are driven, if they are subjected to improper maintenance, or if, for instance, they are run long enough at high throttle with one wheel slipping on ice. Alfonso Affidavit dated February 26, 2004, ¶ 11; Alfonso Affidavit dated March 17, 2004, ¶¶ 11-13; Keefer Deposition 70-71.

If a class member experienced transmission failure for reasons unrelated to any manufacturing or design defect, there would be no liability under the UTPA as to that class member regardless of whether DaimlerChrysler had failed to disclose such defects. See VanVoorhees v. Dodge, 679 A.2d 1077, 1082 (Me. 1996) (claimant under the UTPA must prove not only a violation of the UTPA but that the damages sought are attributable to the UTPA violation). This issue acquires added significance because it is evident from the motion for summary judgment that plaintiffs have not identified the specific defect that they allege causes transmission failure but are instead arguing that

> in the complete absence of any evidence that the product was misused, or of any other cause for the damage, plaintiffs are not required to identify the specific defect that caused the damage; circumstantial evidence that there is a defect is sufficient.

Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, filed June 7, 2004, at 7. Accord, Plaintiffs' Reply Memorandum for Class Certification, filed June 7, 2004, at 6. This amounts, as plaintiffs acknowledge, to a theory that is akin to *res ipsa*

*loquitur*. Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment at 8 n.1.

In this connection, plaintiffs chose not to offer any expert testimony at the class certification stage even though the January 21, 2003 Scheduling Order afforded them that possibility. While it is correct, as plaintiffs argue, that they are not obliged to come forward at the class certification stage with all the evidence that they would seek to introduce at trial, see Plaintiffs' Reply Memorandum on Class Certification, filed June 7, 2004 at 5, plaintiffs have also failed to offer any expert testimony in response to DaimlerChrysler's motion for summary judgment.[6]

The parties disagree as to whether and to what extent a plaintiff suing in Maine may rely on evidence of a malfunction to prove that a product was defective. This is an issue that will require analysis in connection with the motion for summary judgment. For present purposes, it does not matter whether a finder-of-fact may infer the existence of a defect upon a showing that the product did not perform as intended, see McDermott v. City of New York, 406 N.E.2d 460, 464-65 (N.Y. 1980), or whether the plaintiffs, in addition to showing that a malfunction occurred, must show that the product was not subjected to abnormal use and that there were no reasonable secondary causes for the malfunction. See Anderson v. Chrysler Corp., 403 S.E.2d 189,

---

[6] In their Reply Memorandum on Class Certification, plaintiffs make the curious statement that it would have been "risky and ill-advised" to subject their experts to depositions at the class certification stage "only to have [DaimlerChrysler] come forward with new evidence during merits discovery." Id. However, plaintiffs have the burden of proof and therefore are required to provide their proposed expert opinions to DaimlerChrysler before DaimlerChrysler would be required to provide any responding expert testimony. In addition, once DaimlerChrysler challenged the merits of plaintiffs' case by filing a motion for summary judgment and plaintiffs still did not offer any expert testimony, the court has no alternative, in considering whether common issues predominate under Rule 23(b)(3), except to conclude that plaintiffs are relying on their *res ipsa* theory.

193-94 (W.Va. 1991).[7] In the former case, even if plaintiffs need not exclude alternative causes, DaimlerChrysler would have the right to demonstrate that alternative causes exist. Thus, for every member of the class who has experienced a transmission failure, there would have to be an individualized inquiry as to whether there was an alternative explanation for the failure.

The existence of a defect is one of the fundamental liability issues in this case. For instance, unless there are a sufficient number of otherwise unexplainable transmission failures, it would be difficult, if not impossible, to draw the inference that members of the proposed class who have not experienced transmission failures nevertheless have a latent transmission defect. Even before reaching the issue of whether DaimlerChrysler engaged in any deceptive practices, therefore, this case fragments into a highly individualized inquiry into whether the cause of each transmission failure has an alternative explanation, an inquiry that would require individualized consideration of such issues as driving habits, repair and maintenance, and the specific circumstances of each transmission failure. Under these circumstances, the court concludes that common issues do not predominate in this case.

DaimlerChrysler also argues that individual issues do not predominate because there would need to be a separate inquiry with respect to damages for each member of

---

[7] In Walker v. General Eletric Co., 968 F.2d 116 (1st Cir. 1992), the First Circuit referred to cases holding that a plaintiff could either demonstrate a specific defect or could show "an unexplained occurrence and [eliminate] all reasonable explanations for the occurrence other than the existence of a defect." 968 F.2d at 120, quoting Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121, 124 (3d Cir. 1984). In Suminski v. Maine Appliance Warehouse, Inc., 602 A.2d 1173, 1175 (Me. 1992), the Law Court did not expressly rule on this issue but cited with apparent approval to A.A.A. Exteriors, Inc. v. Don Mahurin Chevrolet & Oldsmobile, Inc., 429 N.E.2d 975 (Ind. App. 1981). Based on A.A.A. Exteriors, the court believes that the Law Court would adopt the principle that the existence of a defect may be inferred from a malfunction only in the absence of both abnormal use and reasonable secondary causes. See 429 N.E.2d at 978.

the class. Plaintiffs respond that if liability can be reached on a class basis, damages issues could, if appropriate, be left for separate adjudication. Plaintiffs' Reply Memorandum on Class Certification, filed June 7, 2004, at 9-11. Because the court concludes that common issues do not predominate even on the question of liability, particularly on the fundamental issue of whether there is a defect, it need not reach this issue.

The parties also disagree as to whether reliance must be proven under the UTPA. If reliance must be proven under the UTPA, there is substantial authority for the proposition that "class certification is inappropriate in cases where individualized proof of reliance is required." Millett, 2000 Me. Super. LEXIS 39 at *44, citing Castano, 84 F.3d at 745; Thompson v. American Tobacco Co., 189 F.R.D. 544, 552 (D. Minn. 1999). While reliance is not strictly an element of a cause of action under the UTPA, a claimant under the UTPA must demonstrate that he or she was injured by the deceptive practice. E.g., Tungate v. MacLean-Stevens Studios, Inc., 1998 ME 162, ¶ 13, 714 A.2d 792, 798 ("the plain language of the statute denies relief for plaintiffs who do not demonstrate injury from the alleged deceptive or unfair practice"). If, for example, a member of the class was well aware of the potential for transmission failures in DaimlerChrysler minivans and nevertheless purchased such a van, that class member would be ineligible for relief. See In re Ford Motor Co. Vehicle Paint Litigation, 182 F.R.D. 214, 221, (E.D. La. 1998). The court is not necessarily persuaded that there is a large number of proposed class members who fall into this category but there may well be some,[8] and issues with

---

[8] For instance, plaintiffs themselves allege that warnings were raised about DaimlerChrysler transmissions by Consumer Reports as early as 1991. Complaint ¶ 41. Moreover, based on the record in this case, there are a number of persons who were apparently aware of the potential for transmission failure who nevertheless subsequently purchased a DaimlerChrysler minivan. Of the approximately thirty affidavits submitted by plaintiffs in opposition to the motion for summary judgment, five recite that they experienced transmission

respect to specific class members' knowledge as to the alleged propensity of DaimlerChrysler minivans to experience transmission failures contributes to the conclusion that common issues do not predominate in this case.

## D.    RULE 23(b)(3)—SUPERIORITY AND MANAGEABILITY

The second part of the inquiry under Rule 23(b)(3) is whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."[9] In this case the parties have focused on whether a class action would be manageable, whether the National Highway Traffic Safety Administration (NHTSA) would provide a superior method to address the merits of plaintiffs' transmission defect claims, and whether the availability of attorney fees for prevailing claimants under the UTPA militates against certification of a class action in this case.

Because the court has already concluded that this case fails the predominance test under Rule 23(b)(3), it need not reach the superiority and manageability issues and will discuss those issues only briefly. On the paramount issue of manageability, the court concludes that, just as in Millett,

---

failures with respect to DaimlerChrysler minivans from model years, 1992, 1993, 1994, or 1995 and that they nevertheless purchased DaimlerChrysler minivans in subsequent model years. See Affidavit of Craig Warren, sworn to March 29, 2004, ¶¶ 2, 5, 6; Affidavit of Jeffrey Sennett, sworn to March 18, 2004, ¶¶ 2, 4; Affidavit of Mary Anne Costanzer, sworn to March 20, 2004, ¶¶ 2, 3; Affidavit of David Unger, sworn to March 26, 2004, ¶¶ 2, 3, 7; Affidavit of James Keene, sworn to March 22, 2004, ¶¶ 2, 3, 4, 5, 7. At least one of these persons alleges, however, that he was affirmatively misled by DaimlerChrysler that the previous transmission problems had been resolved. Second Affidavit of David Unger, sworn to June 3, 2004. What specific inquiries, if any, were made and what responses, if any, were given to purchasers who had experienced transmission failures or who were aware of transmission failures in prior model years would be the subject of proof specific to those individuals rather than proof common to the class as a whole.

[9] In this connection, the Rule states that pertinent issues include the interest of class members in controlling separate actions, the nature of any related litigation that has already commenced, the desirability of concentrating claims in one forum, and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A)-(D).

> the most persuasive reason why the proposed class action is not the superior method for adjudication of this controversy is the same reason why this action cannot meet the predominance requirement. There are too many individualized issues which cannot be addressed on a class-wide basis.

2000 Me. Super. LEXIS 39 at *67.

Moreover, the statutory provision for attorney fees to a successful litigant under the UTPA, see 5 M.R.S.A. § 213(2), is another factor that weighs against certification of a class in this case. See Castano, 84 F.3d at 748. One consideration in deciding whether a class action is a superior method for resolving a controversy is whether an alternative method exists. See Millett, 2000 Me. Super. LEXIS 39 at *66, 69-71. In this respect the history of this case is instructive. Even though the named plaintiffs' vehicle no longer fell within the three year/36,000 mile warranty period, DaimlerChrysler offered to pay plaintiffs' transmission repairs once they received a letter from plaintiffs' attorney. Whether DaimlerChrysler did this to engender goodwill or (what is perhaps more likely) for economic reasons — because it recognized that, once a lawyer for plaintiffs was involved, it would ultimately save money if plaintiffs would accept full payment of their repair costs — what is relevant in this connection is that with the advent of counsel, DaimlerChrysler attempted to resolve the case via full payment of plaintiffs' repair costs.

Plaintiffs argue that even with the availability of attorney fees, it will not be economically feasible for most individual class plaintiffs to pursue relief against DaimlerChrysler if they experience transmission failure. Because the motion for class certification has already been found to fail Rule 23(b)(3)'s predominance requirement, the court does not have to resolve this issue. However, even if the predominance requirement were met, the court is not necessarily convinced that a class action is the only feasible avenue for redress in this case.

Finally, the court has previously considered the availability of an administrative remedy through NHTSA, see September 20, 2002, Order at 1-5, and has little to add on that subject. To the extent that safety concerns are involved, NHTSA provides a better avenue of relief. However, given that the safety issues involved here have not been found sufficiently serious to command NHTSA's attention to date, and given that plaintiffs are asserting monetary claims independent of any safety issues that may exist (and indeed have excluded any personal injury claimants from the proposed class), the court cannot conclude that NHTSA offers a superior avenue for resolving plaintiffs' monetary claims.[10]

The entry shall be:

Plaintiffs' Motion for Class Certification is denied.

Dated: May 2 4, 2005

Thomas D. Warren
Justice, Superior Court

---

[10] Plaintiffs have represented that they had filed a petition with NHTSA as of June 2004, but it is not clear exactly when that petition was filed. DaimlerChrysler contends that plaintiffs had not filed such a petition as of December 2003. Regardless of when the petition was filed, the court has not been advised that NHTSA has taken any action.

STATE OF MAINE
Cumberland, ss.

SUPERIOR COURT
Civil Action
Docket No. CV-01-581

ALLEN MAZEROLLE and ANNE
MAZEROLLE, on behalf of themselves
and all others similarly situated,

Plaintiffs

v.

DAIMLERCHRYSLER CORP.,

Defendant

ORDER

Before the court is plaintiffs' motion for class certification. Specifically, plaintiffs Allen and Anne Mazerolle are seeking to certify a class consisting of all persons who reside in Maine and who for personal, family, or household purpo with a DaimlerChrysler A604/41TE transmission for model years 1994-2001 (except for persons with claims for personal injuries). See Motion for Class Certification filed December 5, 2003, at p. 1.

In their original complaint, filed October 25, 2001, the Mazerolles brought suit on their own behalf and on behalf of a proposed nationwide class of all persons owning or leasing DaimlerChrysler minivans for model years 1994-2001 with A604/41TE transmissions. Complaint ¶59. Their complaint alleged that DaimlerChrysler minivans from those model years had defective transmissions which DaimlerChrysler knew were likely to fail after the express three-year/36,000 mile warranty period had expired. E.g., id. ¶¶ 1, 44. On behalf of themselves and all others similarly situated, the Mazerolles alleged (1) that DaimlerChrysler had violated the Maine Unfair Trade Practices Act (UTPA) and other state unfair and deceptive trade practice statutes (Count I); (2) that

DaimlerChrysler's express three year/36,000 mile warranty was unconscionable (Count II); (3) that DaimlerChrysler had wrongfully concealed a dangerous condition (Count III); (4) that DaimlerChrysler had breached its express warranty (Count IV); (5) that DaimlerChrysler had breached implied warranties under the UCC (Count V); and (6) that DaimlerChrysler's three year/36,000 mile warranty failed of its essential purpose (Count VI).

The relief sought in the complaint by the Mazerolles on behalf of themselves and their putative class includes restitution for any repair costs already paid and an order requiring DaimlerChrysler to fix or repair the latent transmission defects in any vehicle of a class member that has not already been repaired. Complaint, Prayer for Relief, ¶¶ 2, 4. The latter form of relief would amount, in effect, to a judicial recall of all Dodge, Chrysler, and Plymouth minivans manufactured between 1994 and 2001.

Instead of answering, DaimlerChrysler filed a motion to dismiss and after briefing, the court granted that motion except as to plaintiffs' UTPA claims. See Order on Motion to Dismiss filed September 20, 2002. Thereafter, on December 23, 2002, the court issued an order initially limiting discovery to factual issues pertinent to class certification and directing counsel to submit a proposed scheduling order. That order was duly submitted and signed on January 21, 2003. It provided that discovery would take place during a seven and one-half month period followed by the briefing of the class certification motion. The discovery deadline was extended once by agreement, see order filed July 29, 2003, and was extended again as a result of a discovery dispute as to whether DaimlerChrysler should be required to produce nationwide data relating to transmission failures. See Conference Record filed September 17, 2003. By that time all parties were assuming that if a class were certified, it would be limited to Maine residents. See Order filed October 27, 2003.

Plaintiffs filed their motion for class certification on December 5, 2003. On March 18, 2004, defendant filed its opposition to the motion for class certification and on April 20, 2004, it filed a motion for summary judgment. On June 7, 2004, plaintiffs filed a reply memorandum on the motion for class certification and an opposition to the motion for summary judgment. Final briefing on both motions was completed on June 21, 2004.

This order will address the class certification motion. On a class certification motion the court must not evaluate or decide the merits of the plaintiffs' claims. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). However, in order to determine whether a class should be certified, the court must fully understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful analysis of the certification issues. Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996); Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992). Accordingly, the court has reviewed the extensive materials presented by the parties on the summary judgment motion in this case in order to determine whether the issues in this case are appropriate for class treatment.

Although the Law Court has not itself addressed the requirements of Rule 23, the Superior Court has comprehensively addressed those requirements in two cases, Karofsky v. Abbott Laboratories, 1997 Me. Super. LEXIS 316, Docket No. CV-95-1009 (Me. Superior Ct., Cumberland Cty., October 15, 1997) (Saufley, J.), and Millett v. Atlantic Richfield Co., 2000 Me. Super. LEXIS 39, Docket No. CV-98-555 (Me. Superior Ct., Cumberland Cty., March 2, 2000) (Cole, J.). As noted in Karofsky, in deciding a class certification motion, the court must "walk the fine line between a rigorous analysis of the basic claims and method of proof presented by the plaintiffs and the

inappropriate delving into an assessment of the merits of those claims." 1997 Me. Super. LEXIS 316 at * 12.

Ultimately the court must be persuaded that plaintiffs have met their burden of showing by a preponderance of the evidence that the proposed class meets all the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). Id. The decision on class certification is committed to the broad discretion of the trial court, which is in the best position to determine the relevant factual issues, to appreciate the consequences of alternative methods of resolving the factual and legal issues, and to select the most efficient method for resolution. Millett, 2000 Me. Super. LEXIS 39 at * 17, citing, inter alia, Castano, 84 F.3d at 740, and Boughton v. Cotter Corp., 65 F.3d 823, 826 (10th Cir. 1995).

## A. GENERAL STANDARDS FOR CLASS CERTIFICATION

Pursuant to M.R. Civ. P. 23(a), a class may be certified when the plaintiffs demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

If the court is satisfied that all four of the Rule 23(a) requirements have been met, it must go on to determine whether the plaintiffs have also demonstrated that the case falls into at least one of the categories set forth in Rule 23(b) as appropriate for class

treatment. Plaintiffs assert that this case meets both the requirements of Rule 23(b)(2) and Rule 23(b)(3).

DaimlerChrysler does not contest that this case meets the requirements of Rule 23(a)(1) and 23(a)(3)—the "numerosity" and "typicality" requirements. However, it does not agree that this case meets the requirements of Rule 23(a)(2) and 23(a)(4). Specifically, with respect to Rule 23(a)(2), DaimlerChrysler argues that because the DaimlerChrysler minivan transmissions were substantially modified twice during the period from 1994-2001, there are no questions of fact common to the putative class. It also argues that because the law of other states would have to be applied if persons residing in Maine bought their DaimlerChrysler minivans out of state, there are no common questions of law.

The court concludes that this case presents common questions of fact and law sufficient to meet the requirement of Rule 23(a)(2).[1] Regardless of the modifications that were made to the DaimlerChrysler minivan transmissions before the 1998 model year and again before the 2000 model year, plaintiffs are alleging that DaimlerChrysler minivan transmissions from the 1994-2001 model years have all experienced inordinate and identical modes of failure and that the marketing of minivans during those model years violated the UPTA. The test for commonality under Rule 23(a)(2) is not demanding and does not require a finding that every question of fact is common to every member of the class. See Millett, 2000 Me. Super. LEXIS 39 at *22-23.

In addition, the court cannot take seriously DaimlerChrysler's contention that the possibility that some putative class members purchased their minivans outside Maine

---

[1] Whether the common questions of fact predominate over questions affecting individual class members under Rule 23(b)(3) will be considered in greater detail below.

deprives this case of common questions of law. The court agrees that if a nationwide class were being proposed, the task of discovering, keeping track of, and applying the laws of fifty separate states would raise major questions as to commonality and manageability. Now that plaintiffs have limited their proposed class to residents of Maine, however, those difficulties no longer exist. If DaimlerChrysler is correct that the location of the purchase would determine whether or not the UTPA applies—which plaintiffs dispute—it would be a simple matter to amend the class definition to exclude out-of-state purchasers.

DaimlerChrysler's objection as to adequacy of representation under Rule 23(a)(4) is also unavailing. DaimlerChrysler suggests that conflicts of interest may arise because three versions of the minivan transmission are at issue (one for model years 1994-1997, one for model years 1998-1999, and one for model years 2000-2001). DaimlerChrysler has failed, however, to explain how different versions of the transmission might lead to a potential conflict of interest, let alone demonstrate that an actual conflict exists.

Although plaintiffs have surmounted the first hurdle of Rule 23(a), a class cannot be certified unless they also meet the requirements of either Rule 23(b)(2) or Rule 23(b)(3).

B.      RULE 23(b)(2)

Rule 23(b)(2) permits a class to be certified if the requirements of Rule 23(a) are met and if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Accepting as true for purposes of the class certification motion plaintiffs' allegations that DaimlerChrysler was aware of and concealed the existence of defects in its minivan transmissions for model years 1994-2001, it is certainly arguable that DaimlerChrysler acted on grounds generally applicable to the class. Moreover, injunctive relief is an available remedy in a suit brought by consumers under the UTPA. See 5 M.R.S.A. § 213(1) (2002). However, certification under Rule 23(b)(2) is not appropriate where the appropriate final relief relates predominately to money damages. See Advisory Committee Note to FED. R. CIV. P. 23(b)(2), 39 F.R.D. at 102; Allison v. Citgo Petroleum Corp. 151 F.3d 402, 411 (5th Cir. 1998); Millett, 2000 Me. Super. LEXIS 39 at *76. See also Ticor Title Ins. Co. v. Brown, 511 U.S. 117, 121 (1994) (noting existence of "at least a substantial possibility" that actions seeking money damages are certifiable only under Rule 23(b)(3)).

Thus, to the extent that Rule 23(b)(2) classes are not limited to requests for injunctive or declaratory relief, any claim for money damages must be merely incidental to the claim for injunctive relief. McManus v. Fleetwood Enterprises, Inc., 320 F.3d 545, 553 (5th Cir. 2003); Allison, 151 F.3d at 415; Smith v. Brown & Williamson Tobacco Corp., 174 F.R.D. 90, 99-100 (W.D. Mo. 1997); Millett, 2000 Me. Super. LEXIS 39 at *76. In this case, plaintiffs are seeking an order (1) requiring DaimlerChrysler to fix or repair the latent transmission defect in all DaimlerChrysler vehicles that have not been repaired "at no cost to class members"; (2) declaring DaimlerChrysler to be financially responsible for all sums required to be paid for repair of their vehicles; (3) requiring DaimlerChrysler to give notice to all class members; (4) permanently enjoining

DaimlerChrysler from pressing the practices challenged in the complaint; and (5) compensatory damages. Complaint, Prayer for Relief, ¶¶ 2, 4, 6-8.[2]

With the exception for the prayer for compensatory damages, all of the foregoing requests are designed to sound equitable in nature. In reality, however, the relief sought in this action is monetary. Thus, in addition to the compensatory damages for class members who have already incurred repair costs, plaintiffs are seeking to make DaimlerChrysler pay for all future repair costs and pay to repair or replace all the allegedly defective transmissions that have not yet been repaired. In the context of class actions, requests for relief seeking compensation for future expenses anticipated to be incurred because of a defendant's alleged wrongdoing constitute claims for monetary, not injunctive, relief. See Millett, 2000 Me. Super. LEXIS 39 at * 79-80, citing Thomas v. FAG Bearings Corp., Inc., 846 F. Supp. 1400, 1404 (W.D. Mo. 1994)).

Even where a plaintiff has demonstrated "ingenuity" in fashioning proposed remedies that appear to be injunctive in nature, class actions may not be maintained under Rule 23(b)(2) where the claims are essentially monetary in nature. In re School Asbestos Litigation, 789 F.2d 996, 1008 (3d Cir. 1986).[3] What governs are "the realities

---

[2] Another remedy asked for in the complaint, disgorgement of all profits received from the sale of the minivans in question, Prayer for Relief, ¶ 5, is not a remedy available under the Maine Unfair Trade Practices Act (UTPA). In their complaint, plaintiffs also sought reformation of DaimlerChrysler's three year/36,000 mile warranty, id. ¶ 12, but that relief, to the extent it might ever have been available, has been mooted by the dismissal of plaintiffs' warranty claims.

[3] By way of example, plaintiffs have fashioned their claim for future repair costs as a request for an order directing DaimlerChrysler to pay for future repairs. Assuming that plaintiffs can establish that it is probable that class members will incur future repair expenses, however, such future expenses would be a potential component of a monetary damage award. DaimlerChrysler argues that persons who have not yet incurred repair costs are not properly included in the plaintiff class because they have not yet suffered any "loss of money or property" within the reach of 5 M.R.S.A. § 213(1). The Mazerolles counter that class plaintiffs who have not incurred repair costs would still be entitled to an amount equalling the difference between the value of a minivan as purchased with a latent transmission defect and the value of a minivan without such a defect. See Plaintiffs' Memorandum in Reply to Defendant's

of the litigation." Id.; Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n, 136 F.R.D. 372, 381 (D. Del. 1991); Millett, 2000 Me. Super. LEXIS 39 at * 81. In this case the realities of the litigation are that plaintiffs' various requests for injunctive relief are incidental to their monetary claims, not the other way around.

Instances in which monetary relief is incidental to injunctive relief for purposes of Rule 23(b)(2) involve cases in which monetary damages can be awarded as part of a uniform group remedy without the necessity of additional individual determinations. See McManus, 320 F.3d at 553-54; Allison, 151 F.3d at 414-15. Here, additional individual determinations would be necessary to determine what repair costs a class member had already incurred in the past, to what extent those costs were attributable to defective transmissions, and what repair costs would be probable in the future or would be incurred as time went on. This is not a case where the monetary relief sought is relief to which class members would "automatically" be entitled upon a finding of liability. Allison, 151 F.3d at 415.

Accordingly, this case is not eligible for certification under Rule 23(b)(2, and the question whether a class should be certified depends on whether this case falls within the ambit of Rule 23(b)(3).

---

Opposition to Class Certification, filed June 7, 2004, at 12-13. For present purposes, the court does not have to decide whether the Mazerolles are correct. If they are, a claim for the difference between the value of what they received and the value of what they bargained for would still translate into a monetary claim. See McManus, 320 F.3d at 553-54.

C.    RULE 23(b)(3)—PREDOMINANCE

Rule 23(b)(3) permits class certification (1) where the questions of law or fact common to the class "predominate" over any questions affecting any individual members, and (2) where the court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.    The Advisory Committee Notes indicate that Rule 23(b)(3) was intended for "those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results."    Advisory Committee Note, 39 F.R.D. at 102-03.

The issue of whether common issues "predominate" is related to the commonality requirement of Rule 23(a)(2) discussed above.    The predominance request, however, is "far more demanding" than the commonality request.    Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997).    "To predominate, 'it is not enough that the claims arise out of a common nucleus of operative fact.    Instead, the common questions must be central to all the claims. . . .'"    Millett, 2000 Me. Super. LEXIS 39 at *38, quoting Puerto Rico v. M/V Emily S., 158 F.R.D. 9, 15 (D.P.R. 1994); Mattoon v. City of Pittsfield, 128 F.R.D. 17, 20 (D. Mass. 1989).    As the court noted in Millett, cases involving a single event, such as an airplane crash, have more frequently been found suitable for class certification under Rule 23(b)(3) than product liability cases, where there is no single event on which liability is premised and no single proximate cause that applies equally to each member of the class.    2000 Me. Super. LEXIS 39 at *41-42, citing Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 n.20; In re Northern District of California Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847, 853 (9th Cir. 1982), cert. denied, 459 U.S. 1171 (1983).    In the court's view, this case is closer to a products liability

case than a mass disaster case. This does not preclude class certification but indicates that plaintiffs' burden to show that common issues predominate will be more difficult to meet.

Implicit in the predominance issue is whether the adjudication of common issues will help achieve judicial economy, Millett, 2000 Me. Super. LEXIS 39 at *38-39, quoting Valentino v. Carter-Wallace, Inc. 97 F.3d 1227, 1234 (9th Cir. 1996), or whether individual issues will so overwhelm the common issues as to bog down the proceeding and create judicial diseconomy. See Smith, 174 F.R.D. at 94.[4]

In this case DaimlerChrysler argues that common issues do not predominate because individualized determinations will be necessary with respect to a number of issues. First, DaimlerChrysler points out that three different versions of the A604/41TE transmission were used for model years 1994-2001. See Alfonso Dep. 162-63, 167-69. Although this is not disputed by plaintiffs, they allege that despite the modifications to the transmission, DaimlerChrysler minivan transmissions continued to sustain an inordinate rate of failures and that the modes of failure were identical to those experienced earlier. See, e.g., Plaintiffs' Reply Memorandum on Class Certification, filed June 7, 2004, at 1-2, 5; Exhibit 1 to Gilman Declaration dated December 4, 2003; Exhibit 1 to Rubin Declaration dated June 7, 2004;[5] Exhibit 3 to Rubin Declaration dated June 7, 2004; Exhibit 7 to Rubin Declaration dated June 7, 2004.

---

[4] Another potential problem in the event that a class is certified despite the existence of significant individual issues is that the proceedings will focus on the common issues and the individual issues will be given short shift. This is presumably the reason that the Advisory Committee Note speaks of the need not to sacrifice procedural fairness in certifying a class under Rule 23(b)(3).

[5] By letter dated May 12, 2005 plaintiffs' counsel has confirmed that Exhibit 1 to the June 7, 2004 Rubin Declaration (filed under seal) is the same exhibit submitted as Exhibit 3 to the December 4, 2003 Gilman Declaration. The Gilman and Rubin declarations are unsworn and do not state that they are submitted "under penalty of perjury" under 28 U.S.C. § 1746. If any

That three different versions of the A604/41TE transmission are involved definitely introduces multiple issues into the case. The testimony of DaimlerChrysler's design engineer in charge of the 1998 model year modification gives DaimlerChrysler a basis to argue that no defects existed in its minivan transmission at any time, that with respect to the 1996 model year there were some manufacturing glitches during the period from August 1995 to January 1996, that major design changes were made to improve the transmission before the 1998 model year, and that further changes were made before the 2000 model year. See Alfonso Dep. 27-28, 44-51, 119-20, 154-58, 162-64, 166-69; Keeler Affidavit ¶ 17.

On a motion for class certification, it is not the court's role to consider the merits of these issues. However, it concludes that the existence of these issues will result in a number of factual determinations potentially affecting different model years. These include:

(1) whether the transmission installed for model years 1994-1997 possessed a latent defect;

(2) whether the modified transmission installed for model years 1998-1999 possessed any common defect with the 1994-1997 transmission or whether it possessed any independent defect; and

(3) whether the further modified transmission installed for model years 2000-2001 possessed any common defect with its predecessors or any independent defect.

Moreover, because this is not a product liability case but a claim under the UTPA, liability depends not only on the existence of a defect but also on proof that DaimlerChrysler engaged in some deceptive practices in connection therewith. For

---

disputed facts were set forth in the declarations, therefore, they would not be entitled to any weight. To the extent that those declarations merely append other materials that could have been annexed as exhibits to plaintiffs' memoranda and whose authenticity is not questioned by defendant, the declarations do not need to be sworn.

purposes of the UTPA, the exact contours of an "unfair or deceptive" act have not been defined, but the case law suggests that such acts equate to actions such as withholding material information, unsubstantiated product claims, high pressure sales tactics, or depriving consumers of post-purchase remedies. See American Financial Services Ass'n v. FTC, 767 F.2d 957, 979 (D.C. Cir. 1985) (cited with approval in Guiggey v. Bombardier, 615 A.2d 1169, 1172-73 (Me. 1992)). The mere existence of defects, absent evidence of deception or misrepresentation, is not sufficient to maintain a claim under the UTPA. E.g., Inniss v. Methot Buick-Opel, Inc., 506 A.2d 212, 216 (Me. 1986).

For present purposes, this means that for each version of the transmission, if defects existed, there is also the question of whether DaimlerChrysler was aware of those defects and engaged in any deceptive trade practices with respect thereto. For instance, DaimlerChrysler has tendered the argument that it believed the modifications for the 1998 model year solved any existing transmission problems. See DaimlerChrysler's Statement of Material Facts in Support of Motion for Summary Judgment, filed April 20, 2004, ¶¶ 7-28.

Whether or not this is correct as a factual matter, it nevertheless demonstrates that the trial of this case would require separate consideration of each version of the transmission installed in DaimlerChrysler minivans from 1994 through 2001, with specific reference to: (1) the existence of any defects; (2) DaimlerChrysler's knowledge of any defects; and (3) any deceptive practices with respect thereto.

This complicates the case but does necessarily not compel a finding that individual issues predominate. Arguably, these issues could be dealt with through the creation of subclasses for each version of the transmission in question. A similar solution, however, is not possible with respect to a second issue on which DaimlerChrysler argues that common issues do not predominate. This is the issue of

causation. On this issue, the court ultimately concludes that certification under Rule 23(b)(3) fails because the individual issues presented on the issue of causation will swamp any common issues presented in this case.

As noted above, plaintiffs' theory is that DaimlerChrysler minivan transmissions fail at an inordinately high rate because of defects of which DaimlerChrysler was aware but did not disclose. DaimlerChrysler contends that transmissions can fail for reasons unrelated to any defects—if minivans are subjected to particular stress in the manner in which they are driven, if they are subjected to improper maintenance, or if, for instance, they are run long enough at high throttle with one wheel slipping on ice. Alfonso Affidavit dated February 26, 2004, ¶ 11; Alfonso Affidavit dated March 17, 2004, ¶¶ 11-13; Keefer Deposition 70-71.

If a class member experienced transmission failure for reasons unrelated to any manufacturing or design defect, there would be no liability under the UTPA as to that class member regardless of whether DaimlerChrysler had failed to disclose such defects. See VanVoorhees v. Dodge, 679 A.2d 1077, 1082 (Me. 1996) (claimant under the UTPA must prove not only a violation of the UTPA but that the damages sought are attributable to the UTPA violation). This issue acquires added significance because it is evident from the motion for summary judgment that plaintiffs have not identified the specific defect that they allege causes transmission failure but are instead arguing that

> in the complete absence of any evidence that the product was misused, or
> of any other cause for the damage, plaintiffs are not required to identify
> the specific defect that caused the damage; circumstantial evidence that
> there is a defect is sufficient.

Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, filed June 7, 2004, at 7. Accord, Plaintiffs' Reply Memorandum for Class Certification, filed June 7, 2004, at 6. This amounts, as plaintiffs acknowledge, to a theory that is akin to *res ipsa*

*loquitur*. Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment at 8 n.1.

In this connection, plaintiffs chose not to offer any expert testimony at the class certification stage even though the January 21, 2003 Scheduling Order afforded them that possibility. While it is correct, as plaintiffs argue, that they are not obliged to come forward at the class certification stage with all the evidence that they would seek to introduce at trial, see Plaintiffs' Reply Memorandum on Class Certification, filed June 7, 2004 at 5, plaintiffs have also failed to offer any expert testimony in response to DaimlerChrysler's motion for summary judgment.[6]

The parties disagree as to whether and to what extent a plaintiff suing in Maine may rely on evidence of a malfunction to prove that a product was defective. This is an issue that will require analysis in connection with the motion for summary judgment. For present purposes, it does not matter whether a finder-of-fact may infer the existence of a defect upon a showing that the product did not perform as intended, see McDermott v. City of New York, 406 N.E.2d 460, 464-65 (N.Y. 1980), or whether the plaintiffs, in addition to showing that a malfunction occurred, must show that the product was not subjected to abnormal use and that there were no reasonable secondary causes for the malfunction. See Anderson v. Chrysler Corp., 403 S.E.2d 189,

---

[6] In their Reply Memorandum on Class Certification, plaintiffs make the curious statement that it would have been "risky and ill-advised" to subject their experts to depositions at the class certification stage "only to have [DaimlerChrysler] come forward with new evidence during merits discovery." Id. However, plaintiffs have the burden of proof and therefore are required to provide their proposed expert opinions to DaimlerChrysler before DaimlerChrysler would be required to provide any responding expert testimony. In addition, once DaimlerChrysler challenged the merits of plaintiffs' case by filing a motion for summary judgment and plaintiffs still did not offer any expert testimony, the court has no alternative, in considering whether common issues predominate under Rule 23(b)(3), except to conclude that plaintiffs are relying on their *res ipsa* theory.

193-94 (W.Va. 1991).[7] In the former case, even if plaintiffs need not exclude alternative causes, DaimlerChrysler would have the right to demonstrate that alternative causes exist. Thus, for every member of the class who has experienced a transmission failure, there would have to be an individualized inquiry as to whether there was an alternative explanation for the failure.

The existence of a defect is one of the fundamental liability issues in this case. For instance, unless there are a sufficient number of otherwise unexplainable transmission failures, it would be difficult, if not impossible, to draw the inference that members of the proposed class who have not experienced transmission failures nevertheless have a latent transmission defect. Even before reaching the issue of whether DaimlerChrysler engaged in any deceptive practices, therefore, this case fragments into a highly individualized inquiry into whether the cause of each transmission failure has an alternative explanation, an inquiry that would require individualized consideration of such issues as driving habits, repair and maintenance, and the specific circumstances of each transmission failure. Under these circumstances, the court concludes that common issues do not predominate in this case.

DaimlerChrysler also argues that individual issues do not predominate because there would need to be a separate inquiry with respect to damages for each member of the class. Plaintiffs respond that if liability can be reached on a class basis, damages

---

[7] In Walker v. General Eletric Co., 968 F.2d 116 (1st Cir. 1992), the First Circuit referred to cases holding that a plaintiff could either demonstrate a specific defect or could show "an unexplained occurrence and [eliminate] all reasonable explanations for the occurrence other than the existence of a defect." 968 F.2d at 120, quoting Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp., 726 F.2d 121, 124 (3d Cir. 1984). In Suminski v. Maine Appliance Warehouse, Inc., 602 A.2d 1173, 1175 (Me. 1992), the Law Court did not expressly rule on this issue but cited with apparent approval to A.A.A. Exteriors, Inc. v. Don Mahurin Chevrolet & Oldsmobile, Inc., 429 N.E.2d 975 (Ind. App. 1981). Based on A.A.A. Exteriors, the court believes that the Law Court would adopt the principle that the existence of a defect may be inferred

issues could, if appropriate, be left for separate adjudication. Plaintiffs' Reply Memorandum on Class Certification, filed June 7, 2004, at 9-11. Because the court concludes that common issues do not predominate even on the question of liability, particularly on the fundamental issue of whether there is a defect, it need not reach this issue.

The parties also disagree as to whether reliance must be proven under the UTPA. If reliance must be proven under the UTPA, there is substantial authority for the proposition that "class certification is inappropriate in cases where individualized proof of reliance is required." Millett, 2000 Me. Super. LEXIS 39 at *44, citing Castano, 84 F.3d at 745; Thompson v. American Tobacco Co., 189 F.R.D. 544, 552 (D. Minn. 1999). While reliance is not strictly an element of a cause of action under the UTPA, a claimant under the UTPA must demonstrate that he or she was injured by the deceptive practice. E.g., Tungate v. MacLean-Stevens Studios, Inc., 1998 ME 162, ¶ 13, 714 A.2d 792, 798 ("the plain language of the statute denies relief for plaintiffs who do not demonstrate injury from the alleged deceptive or unfair practice"). If, for example, a member of the class was well aware of the potential for transmission failures in DaimlerChrysler minivans and nevertheless purchased such a van, that class member would be ineligible for relief. See In re Ford Motor Co. Vehicle Paint Litigation, 182 F.R.D. 214, 221, (E.D. La. 1998). The court is not necessarily persuaded that there is a large number of proposed class members who fall into this category but there may well be some,[8] and issues with

---

from a malfunction only in the absence of both abnormal use and reasonable secondary causes. See 429 N.E.2d at 978.

[8] For instance, plaintiffs themselves allege that warnings were raised about DaimlerChrysler transmissions by Consumer Reports as early as 1991. Complaint ¶ 41. Moreover, based on the record in this case, there are a number of persons who were apparently aware of the potential for transmission failure who nevertheless subsequently purchased a DaimlerChrysler minivan. Of the approximately thirty affidavits submitted by plaintiffs in opposition to the motion for summary judgment, five recite that they experienced transmission

respect to specific class members' knowledge as to the alleged propensity of DaimlerChrysler minivans to experience transmission failures contributes to the conclusion that common issues do not predominate in this case.


## D. RULE 23(b)(3)—SUPERIORITY AND MANAGEABILITY

The second part of the inquiry under Rule 23(b)(3) is whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."[9] In this case the parties have focused on whether a class action would be manageable, whether the National Highway Traffic Safety Administration (NHTSA) would provide a superior method to address the merits of plaintiffs' transmission defect claims, and whether the availability of attorney fees for prevailing claimants under the UTPA militates against certification of a class action in this case.

Because the court has already concluded that this case fails the predominance test under Rule 23(b)(3), it need not reach the superiority and manageability issues and will discuss those issues only briefly. On the paramount issue of manageability, the court concludes that, just as in <u>Millett</u>,

---

failures with respect to DaimlerChrysler minivans from model years, 1992, 1993, 1994, or 1995 and that they nevertheless purchased DaimlerChrysler minivans in subsequent model years. See Affidavit of Craig Warren, sworn to March 29, 2004, ¶¶ 2, 5, 6; Affidavit of Jeffrey Sennett, sworn to March 18, 2004, ¶¶ 2, 4; Affidavit of Mary Anne Costanzer, sworn to March 20, 2004, ¶¶ 2, 3; Affidavit of David Unger, sworn to March 26, 2004, ¶¶ 2, 3, 7; Affidavit of James Keene, sworn to March 22, 2004, ¶¶ 2, 3, 4, 5, 7. At least one of these persons alleges, however, that he was affirmatively misled by DaimlerChrysler that the previous transmission problems had been resolved. Second Affidavit of David Unger, sworn to June 3, 2004. What specific inquiries, if any, were made and what responses, if any, were given to purchasers who had experienced transmission failures or who were aware of transmission failures in prior model years would be the subject of proof specific to those individuals rather than proof common to the class as a whole.

[9] In this connection, the Rule states that pertinent issues include the interest of class members in controlling separate actions, the nature of any related litigation that has already commenced, the desirability of concentrating claims in one forum, and the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3)(A)-(D).

> the most persuasive reason why the proposed class action is not the superior method for adjudication of this controversy is the same reason why this action cannot meet the predominance requirement. There are too many individualized issues which cannot be addressed on a class-wide basis.

2000 Me. Super. LEXIS 39 at *67.

Moreover, the statutory provision for attorney fees to a successful litigant under the UTPA, see 5 M.R.S.A. § 213(2), is another factor that weighs against certification of a class in this case. See Castano, 84 F.3d at 748. One consideration in deciding whether a class action is a superior method for resolving a controversy is whether an alternative method exists. See Millett, 2000 Me. Super. LEXIS 39 at *66, 69-71. In this respect the history of this case is instructive. Even though the named plaintiffs' vehicle no longer fell within the three year/36,000 mile warranty period, DaimlerChrysler offered to pay plaintiffs' transmission repairs once they received a letter from plaintiffs' attorney. Whether DaimlerChrysler did this to engender goodwill or (what is perhaps more likely) for economic reasons — because it recognized that, once a lawyer for plaintiffs was involved, it would ultimately save money if plaintiffs would accept full payment of their repair costs — what is relevant in this connection is that with the advent of counsel, DaimlerChrysler attempted to resolve the case via full payment of plaintiffs' repair costs.

Plaintiffs argue that even with the availability of attorney fees, it will not be economically feasible for most individual class plaintiffs to pursue relief against DaimlerChrysler if they experience transmission failure. Because the motion for class certification has already been found to fail Rule 23(b)(3)'s predominance requirement, the court does not have to resolve this issue. However, even if the predominance requirement were met, the court is not necessarily convinced that a class action is the only feasible avenue for redress in this case.

Finally, the court has previously considered the availability of an administrative remedy through NHTSA, <u>see</u> September 20, 2002, Order at 1-5, and has little to add on that subject. To the extent that safety concerns are involved, NHTSA provides a better avenue of relief. However, given that the safety issues involved here have not been found sufficiently serious to command NHTSA's attention to date, and given that plaintiffs are asserting monetary claims independent of any safety issues that may exist (and indeed have excluded any personal injury claimants from the proposed class), the court cannot conclude that NHTSA offers a superior avenue for resolving plaintiffs' monetary claims.[10]

The entry shall be:

Plaintiffs' Motion for Class Certification is denied.

Dated: May 19, 2005

Thomas D. Warren
Justice, Superior Court

---

[10] Plaintiffs have represented that they had filed a petition with NHTSA as of June 2004, but it is not clear exactly when that petition was filed. DaimlerChrysler contends that plaintiffs had not filed such a petition as of December 2003. Regardless of when the petition was filed, the court has not been advised that NHTSA has taken any action.

SUPERIOR COURT
CUMBERLAND, ss.
Docket No   PORSC-CV-2001-00581

**DOCKET RECORD**

ALLEN MAZEROLLE  - PLAINTIFF

Attorney for: ALLEN MAZEROLLE
TODD HOLBROOK  - RETAINED 10/25/2001
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: ALLEN MAZEROLLE
PETER RUBIN  - RETAINED 10/25/2001
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: ALLEN MAZEROLLE

VISITING ATTORNEY

-

-   -

ANNE M MAZEROLLE  - PLAINTIFF

Attorney for: ANNE M MAZEROLLE
TODD HOLBROOK  - RETAINED 10/25/2001
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: ANNE M MAZEROLLE
PETER RUBIN  - RETAINED 10/25/2001
BERNSTEIN SHUR SAWYER & NELSON
100 MIDDLE ST
PO BOX 9729
PORTLAND ME 04104-5029

Attorney for: ANNE M MAZEROLLE

VISITING ATTORNEY

-

-   -

vs
DAIMLER CHRYSLER AG-DISMISSED 4-22-02 - DEFENDANT
DAIMLER CHRYSLER CORPORATION - DEFENDANT

Attorney for: DAIMLER CHRYSLER CORPORATION
PETER CULLEY  - RETAINED 12/28/2001
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101

Printed on: 05/20/2005

STATE OF MAINE

CUMBERLAND, ss.

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE

2005 JUN 23 P 12: 31

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-581

ALLEN MAZEROLLE and
ANNE MAZEROLLE,

Plaintiffs,

ORDER

v.

DAIMLERCHRYSLER CORP.,

Defendant.

The procedural history of this case is set forth in the court's amended order filed May 26, 2005, denying plaintiffs' motion for class certification. Remaining to be decided is defendant DaimlerChrysler's motion for summary judgment.

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. E.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. The facts must be considered in the light most favorable to the non-moving party. Id. Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for summary judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99 ¶ 8, 694 A.2d 924, 926.

It is undisputed in this case that the Mazerolles purchased a 1998 Dodge Grand Caravan minivan with a 3-year/36,000 mile warranty in August 1998. Complaint ¶¶ 30, 36. They experienced a transmission failure on April 8, 2001 after having driven 46,000 miles. Defendant's statement of material facts (SMF) filed April 20, 2004 ¶¶ 32-33 (admitted). The Mazerolles are claiming that DaimlerChrysler was aware of the propensity of its minivan transmissions to fail, that DaimlerChrysler did not disclose the problem or take appropriate remedial steps, and that DaimlerChrysler is liable under the Maine Unfair Trade Practice Statute (UTPA), 5 M.R.S.A. §§ 207, 213(1).

The court discussed the elements of a claim under the UTPA in its order on plaintiffs' class certification motion. The UTPA proscribes "unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S.A. § 207. For purposes of the UTPA, the exact contours of an "unfair or deceptive" act have not been defined, but the case law suggests that such acts equate to actions such as withholding material information, unsubstantiated product claims, high pressure sales tactics, or depriving consumers of post-purchase remedies. See American Financial Services Ass'n v. FTC, 767 F.2d 957, 979 (D.C. Cir. 1985) (cited with approval in Guiggey v. Bombardier, 615 A.2d 1169, 1172-73 (Me. 1992)). The mere existence of defects, absent evidence of deception or misrepresentation, is not sufficient to maintain a claim under the UTPA. E.g., Inniss v. Methot Buick-Opel, Inc., 506 A.2d 212, 216 (Me.1986).

The theory of the Mazerolles' UTPA claim is that DaimlerChrysler minivans for model years 1994-2001 had defective transmissions and that DaimlerChrysler failed to disclose material information concerning that defect to purchasers such as the Mazerolles. See Complaint, ¶ 118; Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, filed June 7, 2004, at 1, 6-7, 10-11. While evidence with respect to other model years may be relevant to the Mazerolles' claim, the ultimate question

2

presented on the motion for summary judgment is whether there are disputed issues of fact with respect to the 1998 model year minivan purchased by the Mazerolles.

Two basic issues are presented by DaimlerChrysler's motion for summary judgment:

(1)     Are there disputed issues of fact for trial with respect to whether the A604/41TE transmission installed in the Mazerolles' 1998 minivan was defective?

(2)     If so, are there disputed issues of fact for trial as to whether DaimlerChrysler engaged in any unfair or deceptive practices with respect to any such defect?[1]

At the outset, it bears emphasis that Rule 56 requires that a party "admit", "deny", or "qualify" each factual assertion set forth in a statement of material facts filed pursuant to Rule 56(h)(1) and support each denial or qualification by citations to the record. See Rule 56(h)(2). The rule does not permit parties to respond that assertions are "neither admitted nor denied", a tactic both parties have occasionally employed in this case.[2] Such assertions are deemed admitted. See Tucci v. City of Biddeford, 2005 ME 7 ¶ 9 n.2, 864 A.2d 185, 188 n.2. In addition, the rule specifically requires that there be a citation to the "specific" paragraphs of affidavits and the "specific" pages of depositions. See Rule 56(h)(4). Denials accompanied by general references to a group of exhibits without specific page or paragraph citations are insufficient and will be

---

[1] In order to recover under the UTPA, the Mazerolles would also have to prove that they were injured in their business or property because of the alleged deceptive practices on the part of DaimlerChrysler. See Tungate v. MacLean-Stevenson Studios, Inc., 1998 ME 162 ¶ 13, 714 A.2d 792, 798. Whether the Mazerolles were damaged and whether their damages were caused by the alleged UTPA violations are not issues that are challenged on DaimlerChrysler's motion for summary judgment.

[2] See, e.g., Plaintiffs' SMF filed June 7, 2004 ¶¶ 15-18, 24, 27, 53, 57-59; Defendant's Reply SMF filed June 21, 2004 ¶¶ 1 (e)-(x), 13 (a)-(j).

deemed admissions.[3] The court is not required to read through pages and pages of affidavits and deposition transcripts in their entirety in an attempt to discern which specific paragraphs or pages a party is relying on.

In addition, in their memorandum of law opposing summary judgment plaintiffs have cited certain portions of the record, notably the Alfonso deposition, that are not referenced in their statement of material facts. On a motion for summary judgment, the court is limited to the record references that are set forth in the parties' Rule 56(h) statements. See Botka v. S. C. Noyes & Co., 2003 ME 128 ¶ 19, 834 A.2d 947, 953. References to the record which are not contained in a statement of material facts must be disregarded.

## 1. Existence of Defect

On this issue DaimlerChrysler has established that there is no genuine dispute for trial that the A604/41TE transmission installed in the Mazerolles' 1998 Dodge Grand Caravan was a transmission which bore the same name as the transmission installed in DaimlerChrysler minivans for model years 1994-1997, but which had been significantly redesigned for the 1998 model year. Defendant's SMF filed April 20, 2004 ¶¶ 7-27.[4]

---

[3] See, e.g., Plaintiffs' opposing SMF filed June 7, 2004 ¶ 28, referring to "Rubin Declaration, Exhibits 3-8." Exhibits 3-8 include approximately 31 affidavits, two depositions totaling 193 pages, and documents totaling 48 pages.

[4] The court has examined plaintiffs' responses to ¶¶ 7-27 and concludes that, in those instances where the paragraphs were not admitted, plaintiffs have failed to adequately controvert those paragraphs. With respect to paragraph 7, for example, plaintiffs state that the defendant's assertion is qualified. The record references they cite are "Exhibit 8, Affidavits of Class Members; Exhibit 2." Exhibit 2 consists of photographs that do not controvert the assertion in question. Plaintiffs' citation to "Exhibit 8, Affidavits of Class Members" is equally unavailing. First, Exhibit 8 does not in fact include any affidavits of class members. Second, even if the court were to construe plaintiffs' response as referring to Exhibit 7 (which does contain affidavits of class members), a general reference to 10 affidavits does not constitute the kind of specific record references required by the rule. Third, even if these deficiencies were overlooked, plaintiffs' affidavits at best establish that transmission failures were experienced in 1998 and 1999 minivans. This does not controvert DaimlerChrysler's assertion that the 41TE transmission was significantly redesigned before the 1998 model year

Plaintiffs' responses to paragraphs 8-27 either consist of admissions, qualifications without any record references to substantiate them, or statements that DaimlerChrysler's assertions are neither

4

For purposes of summary judgment, DaimlerChrysler has also established that, subsequent to the 1998 model year redesign, the A604/41TE transmission experienced very low rates of failure. Defendant's SMF filed April 20, 2004 ¶ 28. Plaintiffs' response to this assertion in DaimlerChrysler's statement of material facts is deficient in three respects. First, as noted above, a record reference generally to "Exhibits 3-8" is insufficient.[5] Second, even if the court were to overlook this defect, the materials relied on by the plaintiffs establish at most that there were a number of transmission failures for 1998 and 1999 model year transmissions. That there were a number of transmission failures, however, does not rebut DaimlerChrysler's assertion that the A604/41TE transmission experienced very low <u>rates</u> of failure.

This point bears emphasis. Exhibit 1 to the Rubin Declaration indicates that there were 186 instances recorded in DaimlerChrysler's records in which DaimlerChrysler minivans that were owned or leased by Maine residents for model years 1994-2000 experienced problems identified as either "Differential Pinion Shaft Defect," "Drive Gear and Pinion Defect," "Drive Gear and Pinion-Bearing," or "Differential Bearing Defect." Twenty-three of those instances related to minivans for model year 1998. It is unclear whether the four categories of problems quoted above refer to the kind of transmission failure experienced by the Mazerolles or whether they each involve different problems. For purposes of summary judgment, however, the inference must be drawn in favor of the Mazerolles that most or all 186 instances listed in Exhibit 1 represent transmission failures similar to the failure the Mazerolles experienced.

The existence of 186 transmission defects in Maine for model years 1994-2000 (and 23 transmission defects for model year 1998) is not inconsistent with the evidence

admitted nor denied. See Plaintiffs' opposing SMF filed June 7, 2004 ¶¶ 8-27. All of these paragraphs are deemed admitted.
[5] See n. 3 above.

offered by Chrysler that its post 1997 transmissions experienced a low rate of failure. To rebut that assertion, plaintiffs would have to offer some evidence as to how many DaimlerChrysler minivans were registered in Maine for the years in question. With such evidence, the court could determine the rate of transmission failure represented by the 23 transmission defects for model year 1998, the 28 transmission defects recorded on Rubin Exhibit 1 for model year 1999, and the 25 transmission defects recorded for model year 2000. On this issue, however, the summary judgment record is silent.[6]

The affidavits and incident (CAIR) reports submitted by plaintiffs do not add anything on this issue. Considering all of the affidavits submitted by plaintiffs, there are in Maine six owners of 1998 model year DaimlerChrysler minivans who have experienced transmission failures in addition to the Mazerolles.[7] According to the CAIR reports (Rubin Exhibit 8), another five owners of 1998 minivans and two owners of 1999 minivans in Maine are also reported to have experienced transmission failures.[8] Many of the affidavits and the CAIR Reports describe transmission failures that resulted in broken transmission casings and appear to be similar to the failure experienced by the Mazerolles. Others describe either unspecified transmission failures

---

[6] In their papers on class certification, plaintiffs asserted that there were approximately 10,000 members of their proposed class of persons owning DaimlerChrysler minivans for model years 1994-2001. See Plaintiffs' Memorandum in Support of Class Certification filed December 5, 2003 at 12. This number is not before the court on the motion for summary judgment. Hypothetically, however, if there were 10,000 DaimlerChrysler minivans in Maine and 186 transmission failures, that would represent a failure rate in Maine of .0186 (1.86%).

[7] Although plaintiffs have attempted to group their affidavits as involving pre-1998 purchasers (Rubin Exhibit 3) and post-1997 purchasers (Rubin Exhibit 7), a review of those affidavits reveals at least one owner of a 1998 minivan (Jeffrey Sennett) and one owner of a 1999 minivan (Melissa Guiggey) in Exhibit 3 and one 1994 minivan owner in Exhibit 7 (Lee Hemminger). Although Jacqueline Hewett's affidavit is grouped with the post-1997 affidavits, her affidavit does not specify the model year of her vehicle.

[8] Some of the vehicle owners listed in the CAIR reports have also submitted affidavits (Edward Bregman, Roy Gorey, Kenneth Brown, Temple Ireland, Jeffrey Sennett). To avoid double counting, these individuals have only been counted once in reaching the above totals. In addition , the CAIR Reports list Edward Bregman as the owner of a 1998 minivan, but his affidavit establishes that he owed a 1996 minivan. For purposes of the above totals, the court has relied on the affidavit.

or failures which appear to be dissimilar to the transmission failure experienced by the Mazerolles. See, e.g., Affidavit of Susan Lamarre sworn to April 2, 2004 ¶ 3.

As far as the court can tell, all of the instances recited in the affidavits and in the CAIR reports submitted by plaintiffs are already contained in the list of transmission defects set forth in Rubin Exhibit 1. Construing all these facts in the light most favorable to the Mazerolles, they have failed to submit evidence rebutting DaimlerChrysler's assertion that its post-1997 minivan transmissions experienced a low failure rate.

Plaintiffs also assert in response to ¶ 28 in Defendant's SMF that they have requested but not received records relating to nationwide failure rates. See Plaintiffs' opposing SMF filed June 7, 2004 ¶ 28. In this connection, it is correct that discovery was limited to class certification issues and that for purposes of the class certification motion, the court limited certain of plaintiffs' requests for nationwide data. However, once DaimlerChrysler moved for summary judgment, plaintiffs did not request that discovery be allowed more broadly on issues relating to the summary judgment motion. Nor did plaintiffs file, in response to DaimlerChrysler's summary judgment motion, any Rule 56(f) motion detailing any claim by plaintiffs of an inability to respond to the motion or any request for further discovery.

The Law Court has made it clear that a party claiming inability to respond to a motion for summary judgment must invoke the procedures of Rule 56(f) by filing a Rule 56(f) motion and affidavit. See, e.g., Bay View Bank, N.A. v. Highland Golf Mortgagees Realty Trust, 2002 ME 178 ¶ 22, 814 A.2d 449, 454-55; Curtis v. Allstate Insurance Co., 2002 ME 9 ¶ 33 n.7, 787 A.2d 760, 769 n.7; Bahre v. Liberty Group Inc., 2000 ME 75 ¶¶ 12, 14, 750 A.2d 558, 561-62. In this case, to the extent that plaintiffs suggest that they were unable to respond on certain issues, they neither invoked Rule 56(f) nor filed any

7

motion or affidavit setting forth a request for more discovery. As a result, plaintiffs have not demonstrated that there is a factual dispute for trial with respect to the factual assertions contained in ¶ 28 of DaimlerChrysler's SMF.[9]

At the same time, drawing all inferences in favor of the Mazerolles, the court concludes that regardless of the rate of transmission failure, there is a genuine issue of material fact for trial as to whether the specific 1998 minivan owned by the Mazerolles had a defective transmission. First, the existence of a low rate of failure does not exclude the possibility that the specific transmission failure experienced by the Mazerolles resulted from a defect. As discussed in the court's May 26, 2005 amended order on class certification, the Mazerolles have offered no evidence identifying a specific design or manufacturing defect but are relying on the theory that

> in the complete absence of any evidence that the product was misused, or of any other cause for the damage, plaintiffs are not required to identify the specific defect that caused the damage; circumstantial evidence that there is a defect is sufficient.

Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment, filed June 7, 2004, at 7. This amounts, as plaintiffs acknowledge, to a theory that is akin to *res ipsa loquitur*. Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment at 8 n.1.

To establish at trial that their transmission was defective under this theory, the Mazerolles would have to establish at a minimum that a malfunction occurred, that their transmission was not subject to any abnormal use, and that reasonable secondary causes can be excluded. See A.A.A. Exteriors Inc. v. Don Mahurin Chevrolet & Oldsmobile, Inc., 429 N.E. 2d 975, 978 (Ind. App. 1981), cited with approval by the Law

---

[9] The same is true with respect to the assertions contained in paragraphs 29 and 30 of DaimlerChrysler's SMF (asserting statistically very low rates of failure for 1999 and 2000 model years) and with respect to paragraph 60.

Court in Suminski v. Maine Appliance Warehouse, Inc., 602 A.2d 1173, 1175 (Me. 1992), Accord, Walker v. General Electric Co., 968 F.2d 116, 120 (1st Cir. 1992); Anderson v. Chrysler Corp., 403 S.E. 2d 189, 193-94 (W.Va. 1991). While the court is inclined to the view that the Mazerolles would have the burden of proof on these issues at trial, for purposes of summary judgment all inferences must be drawn in their favor. On this record, there is no evidence of abnormal use by the Mazerolles and no evidence of any alternative cause for their transmission failure. Under these circumstances the court cannot rule out that they will be able at trial to establish the inference that their transmission must have failed as a result of a defect.

On this issue the Mazerolles have also pointed to designations in DaimlerChrysler's records of the transmission problems as "defects". See Rubin Declaration Exhibit 1.[10] In addition, the Mazerolles rely on the testimony of one of DaimlerChrysler's experts that a normal consumer would not expect a transmission failure at 46,000 miles in the absence of any unusual duty cycle and that it would not be an unusual or unreasonable expectation for a transmission to have an expected life of 100,000 miles assuming normal maintenance and no unusually severe usage. Keefer Dep. 63, 96-97, cited in Plaintiffs' Statement of Additional Facts filed June 7, 2004 ¶¶ 4, 8. If transmissions have an expected useful life of 100,000 miles, it follows that some transmissions will last longer than 100,000 miles and some transmissions will fail before the 100,000-mile mark is reached. Not all of those latter failures necessarily result from defects, but on this record the Mazerolles have at least demonstrated that there is a genuine dispute for trial as to whether the specific transmission failure they experienced resulted from a defect.

---

[10] This is true notwithstanding Keefer's testimony that the defect codes are imprecise and may not represent any kind of considered judgment. Keefer Dep. 38. For purposes of summary judgment, the record must be construed in favor of the party opposing summary judgment.

The existence of a defect is not alone sufficient to allow recovery under the UTPA. The express 3-year/36,000 mile warranty gives purchasers protection against all failures, including defects, within the warranty period. Once the warranty has expired, purchasers are on notice that they may bear the risk of malfunctions, including malfunctions resulting from defects, even if those malfunctions occur before reaching the expected useful life of the product.[11]    Nevertheless, if the Mazerolles can demonstrate that DaimlerChrysler engaged in any unfair or deceptive trade practices in concealing the defects, they may be entitled to relief under the UTPA despite the expiration of their warranty.

In sum, for purposes of summary judgment, the court concludes that although DaimlerChrysler has established that it made significant design changes prior to the 1998 model year and experienced low rates of failure thereafter, there is a disputed issue of fact as to whether the specific transmission in the Mazerolles' vehicle failed due to a defect. The remaining question is whether there is a disputed issue of fact as to whether DaimlerChrysler engaged in any unfair trade practices with respect thereto.

## 2.    Unfair Trade Practices

On this issue DaimlerChrysler has established, as noted above, that it significantly redesigned the 41TE minivan transmissions for the 1998 model year and experienced low rates of failure thereafter. DaimlerChrysler also has established that although it experienced a spike in transmission failures for 1996 model year minivans, it

---

[11] If purchasers were legally protected against any failure within the expected useful life of a product, express warranties would be meaningless. As far as the court can tell, the 3 year/36,000 mile warranty offered by DaimlerChrysler here appears to have been standard among American manufacturers at that time and continues to be the warranty offered by Ford and GM. See, e.g., www.warrantydirect.com/warrantydirect/info_mfg_warranty.asp. That warranty is not converted by operation of law into a 100,000-mile warranty just because the expected useful life of a transmission may be 100,000 miles.

10

traced that issue to an unauthorized manufacturing process used by one of its suppliers and had corrected the problem. See Defendant's SMF filed April 20, 2004 ¶¶ 56-60.[12] DaimlerChrysler therefore argues that, under Inniss v. Methot Buick-Opel, Inc., 506 A.2d at 216, there is no factual dispute for trial as to whether any unfair trade practices occurred.

In the Inniss case, the plaintiff had purchased a demonstrator car from an auto dealership without being aware that the car had undergone eleven repairs before she purchased it. Because the evidence did not indicate that any of the repairs involved problems that had not been remedied to the satisfaction of the repair personnel, the Law Court found that the plaintiff had failed to establish that the dealership "was aware of substantial defects still existing at the time of the sales agreement", id., and upheld a directed verdict for the dealership on plaintiff's UTPA claim.

The court agrees that in certain respects Inniss appears to be on all fours with the case at bar. Specifically, on the existing record, plaintiffs have proffered no evidence on which it could be found that, after DaimlerChrysler corrected the manufacturing problem experienced for the 1996 model year and substantially redesigned the transmission for the 1998 model year, DaimlerChrysler was aware that transmission defects still existed when the Mazerolles purchased their minivan.

Plaintiffs, however, point to Binette v. Dyer Library Association, 688 A.2d 898, 906-07 (Me. 1996), which held that if there is a statutory or regulatory duty to disclose certain information, there can be liability under the UTPA for a failure to disclose even if the defendant was unaware of the information in question. They further argue that

---

[12] Those paragraphs are admitted because it is not permissible to state that an assertion in a statement of material fact is neither admitted or denied, because plaintiffs have offered no record citations to the contrary, and because – to the extent plaintiffs rely on an alleged failure to obtain information in discovery in order to respond to ¶ 60 – they failed to invoke the process provided by Rule 56(f).

11

under the federal statutes applicable to motor vehicle safety, DaimlerChrysler had a duty to disclose any problems its customers were experiencing with transmission failures. In this connection, plaintiffs have cited Nevels v. Ford Motor Co., 439 F.2d 251, 258 (5th Cir. 1971), and United States v. General Motors Corp., 574 F. Supp. 1047, 1049 (D.D.C. 1983).

The Nevels and General Motors decisions were interpreting a provision originally enacted in the National Traffic and Motor Vehicle Safety Act of 1966 and now codified at 49 U.S.C § 30118(c).[13] Section 30118(c), which was in effect at the time the Mazerolles purchased their vehicle and at the time of their transmission failure, provides as follows:

> A manufacturer of a motor vehicle or replacement equipment shall notify the Secretary by certified mail, and the owners, purchasers, and dealers of the vehicle or equipment as provided in Section 30119(d) of this section, if the manufacturer –
>
> (1) learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safely; or
>
> (2) decides in good faith that the vehicle or equipment does not comply with an applicable motor vehicle safety standard prescribed under this chapter.

Such a notification is part of the recall process mandated under the statute in the event that either the Department of Transportation or the manufacturer determines that there is a safety-related defect. Thus, as set forth in 49 U.S.C. § 30119(a)(4), a notification under section 30118(c) shall include a statement that the manufacturer will remedy the defect without charge.

---

[13] This provision was originally contained in 15 U.S.C. § 1402(a) and was subsequently contained in 15 U.S.C. § 1411. In 1994 the provision was recodified in 49 U.S.C. § 30118 as part of a general reenactment of the National Traffic and Motor Vehicle Safety Act intended to clarify ambiguities without substantive changes. See H.R. Rep. No. 103-180 at 1 (1993), reported in 1994 U.S.C.C.A.N. 818, 819-20.

The cases cited by plaintiffs hold that even if the Department of Transportation has not acted, the predecessor provisions to § 30118(c) impose a duty on auto manufacturers to give notification to the purchasers of vehicles with "known safety-related defects." United States v. General Motors Corp., 574 F.Supp. at 1049. See Nevels v. Ford Motor Co., 439 F.2d at 258 (once manufacturer discovers a defect that is common to its automobiles, manufacturer is obligated to notify other purchasers). In this case the summary judgment record does not reveal any issue for trial as to whether DaimlerChrysler knew of a defect in its 1998 transmissions, particularly in light of the 1998 model year redesign. See Inniss, 506 A.2d at 216. As a result, Binette does not apply because the statutory duty relied on by plaintiffs only applies when there is a known defect.

The Mazerolles, however, appear to argue that DaimlerChrysler had an ongoing duty to notify them of transmission defects under 49 U.S.C. § 30118(c) and that, notwithstanding the low rate of failure after the redesign for the 1998 model year, the continued occurrence of transmission failures for 1998 vehicles triggered an obligation to send a recall notification under 49 U.S.C. § 30118(c). In this connection, plaintiffs cite AMPAT/Midwest, Inc. v. Illinois Toolworks, Inc., 896 F.2d 1035, 1040-41 (7th Cir. 1990), for the proposition that a manufacturer has a duty to reveal facts known to it that explain the cause of a product failure. The AMPAT case, however, involved affirmative and knowing misrepresentations by a manufacturer that amounted to fraud. See id. What distinguishes this case from AMPAT is the absence of any evidence that DaimlerChrysler knew after its 1998 redesign that its transmissions were defective.

Exhibit 1 to the Rubin Declaration records 18 instances in Maine of transmission problems for 1998 model year vehicles that were ascribed to three different failure codes and that occurred prior to the transmission failure experienced by the Mazerolles. These

13

instances, out of an unknown number of total vehicles on the road, are not sufficient to create a disputed issue for trial as to whether there existed a safety-related defect known to DaimlerChrysler that would have been sufficient to trigger a recall under 49 U.S.C. §§ 30118(c) and 30119. No evidence has been offered that DaimlerChrysler ever focused on these instances or any other transmission incidents for 1998 model year vehicles. No evidence has been offered that DaimlerChrysler recognized that there was a safety-related problem with respect to its 1998 model year transmissions.

Finally, although plaintiffs alleged in their complaint that DaimlerChrysler intentionally renamed its 41TE transmission to mislead consumers as to its problems and that DaimlerChrysler also lowered its warranty period to 3 years or 36,000 miles because of expected transmission failures, Complaint ¶¶ 42-43, no evidence has been offered to support those allegations in plaintiffs' opposition to the motion for summary judgment.[14] Under these circumstances, given the facts that are undisputed on this record as to Chrysler's redesign of the 1998 transmission, DaimlerChrysler is entitled to summary judgment on plaintiffs' UTPA claims based on Inniss.

The entry will be:

Defendant's motion for summary judgment dismissing Count 1 of plaintiffs' complaint is granted. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED: June 23, 2005

_____
Thomas D. Warren
Justice, Superior Court

---

[14] The only evidence in the record with respect to the renaming of the A604 transmission is to the contrary. See Defendant's SMF filed April 20, 2004 ¶¶ 4-5; Plaintiffs' SMF filed June 7, 2004 ¶¶ 4-5; Alfonso Dep. 15-16.

14

CLERK OF COURTS.
  Cumberland County
      P.O. Box 287
Portland, Maine 04112-0287

PETER CULLEY, ESQ.
1 MONUMENT SQUARE
PORTLAND, ME 04101

*Defendant*

CLERK OF COURTS
  Cumberland County
      P.O. Box 287
Portland, Maine 04112-0287

TODD HOLBROOK, ESQ.
100 MIDDLE STREET
PO BOX 9729
PORTLAND, ME 04104-5029

*Plaintiffs*

PETER RUBIN, ESQ.
100 MIDDLE STREET
PO BOX 9729
PORTLAND, ME 04104-5029

*Plaintiffs*